STATE OF MISSOURI, EX REL. CIRCUIT ATTORNEY, *v.* J. P. HERMANN, JR.

July 15, 1881.

1. The act of March 24, 1881, concerning notaries public, does not violate the constitutional inhibition as to the passage of special laws.

2. There is no unconstitutional incongruity between the title and the body of the act, by reason of the use of the word "vacate" in the former and the word "abolished" in the latter, since it is apparent that the latter word was used in the sense of vacated.

3. The constitutional provision that "all officers * * * appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors are * * * appointed and qualified," contains no prohibition against the vacating of such offices by the legislature.

4. The constitutional provision (Art. XIV., sect. 7) for the removal of officers for official dereliction, places no limitation upon the power of the legislature to vacate an office.

5. The legislature may vacate or abolish any office created by it, and the office of notary public falls within the rule.

6. Where the power to abolish an office exists the power to take it away from a certain class of incumbents follows, unless done in a manner objectionable as being special legislation.

INFORMATION of *quo. warranto*.

*Judgment of ouster.*

JOSEPH R. HARRIS, circuit attorney, *pro se:* That the word "abolished" is used in the body of the act instead of the word "vacated" is neither such a departure from the subject-matter of the title of the act, nor from its express language, as will affect its validity. — *St. Louis* v. *Tiefel,* 42 Mo. 578 ; *The State* v. *Matthews,* 44 Mo. 523 ; *The State* v. *Miller,* 45 Mo. 495 ; *The State* v. *Saline County,* 51 Mo. 350. The act is not a special law. — *The State* v. *Tolle,* 71 Mo. 645 ; *The State* v. *Finn,* 8 Mo. App. 434 ; *The State* v. *Shields,* 4 Mo. App. 259. A mere legislative office is always subject to be controlled, modified, or repealed by the body creating it. — *The State* v. *Davis,* 44 Mo. 129 ; 38 Mo. 419 ; *Westberg* v. *Kansas City,* 64 Mo. 493.

MARSHALL & BARCLAY, for the respondent : " No law is general which does not apply equally to all classes of persons or subjects embraced in its provisions within the territorial limits to which the law applies." — *The People* v. *Cooper,* 83 Ill. 584 ; *Williams* v. *Beidelman,* 7 Nev. 68 ; *Ex parte Westerfeld,* 11 Cent. L. J. 267 ; Cooley's Const. Lim. *391. Section 4 of the act is a partial repeal of a general law. — *Sanborn* v. *Commissioners,* 9 Minn. 273 ; *Lewis* v. *Webb,* 3 Me. 326 ; *s. c.* 66 Me. 152. Its title and its provisions are incongruous. — *In re Goode,* 3 Mo. App. 226. The use of language permitting the removal of such officers for cause, implies a prohibition against removal except for cause. — "Voice of Law," 10 ; *Field* v. *The People,* 2 Scam. 79 ; *Dist* v. *Dubuque,* 7 Iowa, 262 ; *The People* v. *Jewett,* 6 Cal. 291. Such removal from office is void. — *Lowe* v. *The Commonwealth,* 3 Metc. (Ky.) 240. The act is an attempt to oust one set of persons and to fill the office with another. — *The People* v. *Jewett,* 6 Cal. 291 ; *Colten* v. *Ellis,* 7 Jones L. 545 ; *Stadler* v. *Detroit,* 13 Mich. 346. The term of the office of notary public being fixed by the Constitution, cannot be

thus indirectly limited by the legislature. — *The State* v. *Wiltz*, 11 La. An. 439 ; *The People* v. *Dubois*, 23 Ill. 547 ; Cooley's Const. Lim. *277. A law which abolishes an office and recreates the same office does not oust the incumbents. — *The State* v. *Baldwin*, 45 Conn. 134 ; *Fullerton* v. *Spring*, 3 Wis. 667.

LEWIS, P. J., delivered the opinion of the court.

This is an information in the nature of *quo warranto*, filed by the circuit attorney, *ex-officio.* The questions to be determined arise upon a demurrer to the defendant's answer. The defendant was regularly commissioned as a notary public within and for the city of St. Louis, on the twenty-eighth day of August, 1878, for a term of four years. He claims that it is his right to continue in office until August 28, 1882, notwithstanding the passage of an act of the General Assembly, entitled "An act to regulate the appointment of notaries public in all cities having a population of one hundred thousand inhabitants or more, and to vacate the offices of all notaries public in office in such cities ten days after the taking effect of this act," approved March 24, 1881. Sess. Acts 1881, p. 172. The first section of this act provides that " the governor shall appoint and commission, in all cities having a population of one hundred thousand inhabitants or more, one notary public only to every thirty-five hundred inhabitants in said cities." By the fourth section, "All acts and parts of acts inconsistent with this act are hereby repealed, and the office of any notary public in such city holding a commission bearing date prior to the passage of this act, and whose term of office as such notary public has not expired at the time this act becomes a law, shall be abolished at the expiration of ten days after the taking effect of this act ; and every person who shall act as notary public after his office shall be thus vacated, or after his term shall have expired, or without legal authority to act as notary public, shall be

guilty of a misdemeanor." If this act is constitutional and valid, we must render a judgment of ouster against the defendant.

It is conceded in argument that, " in the absence of constitutional prohibitions, the legislature has absolute power over offices, and 'may even remove particular officers. There is no vested right to an office, in this country, except when the constitutions of the states secure such right." This concession so far simplifies our inquiry that, if the defendant cannot show a specific constitutional provision which entitles him to retain his office he must surrender it, under the act above referred to.

The defendant claims that the fourth section of the act is a special law, and obnoxious to the objections which prevail, on general principles, against special legislation. Such objections are generally understood to be applicable to laws which single out particular individuals belonging to a class, and subject them to rules which are not to govern other members of the same class. The defendant holds that, in this instance, all the notaries public in one of the cities embraced within the act constitute a class; and that the law, in segregating those of them whose commissions bear date prior to the passage of the act, and whose terms of office have not expired at the time when the act becomes a law, encounter the objections mentioned. The position seems to assume too much, as to what constitutes a class. It would be quite as plausible to aver that all the notaries public in the State constitute a class, and therefore that the law cannot properly set apart those in cities having a majority of one hundred thousand or more. But the defendant's counsel expressly disclaims all objection to discriminations on account of population. Again, it might be asserted that all state officers constitute a class; that to single out notaries public in a law to operate upon them only, would be to make an objectionable distinction. The authorities to which we are referred recognize no such arbitrary classification as is here-

attempted for the defendant.    In *The People* v. *Cooper* (83 Ill. 585), the court, in defining the requisites of a general law, say : " The number of persons upon whom the law shall have any direct effect may be very few, by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides."   We cannot perceive that the law before us falls short of this standard.   It operates equally and uniformly upon all brought within the " relations and circumstances " of being notaries public, whose commissions bear date prior to a certain time, and are not to expire until after the taking effect of the law. These constitute the class to be operated upon.   No provisions are made for any member of the class, which does not operate equally and uniformly upon all brought within the same " relations and circumstances."   We cannot hold that the law is special by reason of this designation of dates, with reference to the commissions and terms of office.   It is not claimed to be special because of its exclusive application to notaries in cities having a certain population.   No other ground is suggested, upon which it may be considered as a special law.   It is therefore unnecessary to consider here the effect of the constitutional requirement that, " where a general law can be made applicable, no local or special law shall be enacted."   For the same reason, it is unnecessary to consider the fact that " the section in question is a partial repeal of a general law."   The constitutional provisions referred to in this connection apply to local and special laws only, of which this is not one.

It is claimed that there is an unconstitutional incongruity between the title of the act and the enactment itself.

The title uses the word " vacate," whereas the act declares that certain notarial offices shall be " abolished."   In the more accurate use of those terms, to vacate an office would be to remove the incumbent only, while to abolish it would be to destroy the office also.   But it needs only a single

reading to perceive that the word " *abolished,*" in the fourth section, is used in the sense of " *vacated.*" The whole context of the law shows that there is no intention to abolish the notarial office. The contrary is plainly expressed by the first section. In immediate connection with the sentence in which the word " abolished " occurs, it is declared that " every person who shall act or assume to act as notary public after his office shall be *thus vacated,* or," etc. This is sufficient of itself to demonstrate that there is no incongruity between the words used, as it is intended they shall be understood.

We are not prepared to admit, however, that even if the meanings were really different, as contended for, this would constitute such an incongruity between the title and the act as would invalidate the statute.

The defendant urges that the act is in violation of section 5, Article XIV., of the state constitution : " In the absence of any contrary provision, all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected, or appointed, and qualified."

It is suggested that this provision was adopted in the present constitution, as a means of guarding against the recurrence of certain alleged abuses or usurpations of authority, which have become historical, in the sudden and arbitary ejection from their official positions of prominent state functionaries in Missouri. The historical interpretation thus attempted does not seem to be sustained by the facts. The provision is substantially copied from the constitution of 1865, Article XI., section 8, which was adopted before the events occurred, which are supposed to have inspired the constitutional caution.

We understand the general purpose of this provision to be nothing more than the prevention of an *interregnum* between the expiration of any officer's term of office, and the

qualification of his successor to discharge the same official duties. The defendant would have us interpret literally the words, " shall hold office during their official terms," as meaning from the beginning to the end of all the years annexed to the term of office, by the law creating it. Such an interpretation would make it impossible for an official term to end otherwise than by lapse of time. There could be no removal by any authority, or even by residence out of the State, or by death itself, if any of these things should occur before expiration of the time designated as the " official term." We think no such meaning is intended.

The official *term*, as here understood, may end by the resignation or death of the incumbent, and quite as effectually by his removal from office at the command of any lawfully constituted authority for that purpose. When an officer is thus removed, his term ends as completely as if it were by lapse of time. The constitution does not intend to interfere with any of the methods whereby an officer's incumbency may be made to cease, according to law, but only to provide that whenever it does cease, by whatever means, he shall still be empowered to act until the qualifying of his successor.

It is further argued that section 7, Article XIV., of the constitution, limits in all cases the power of removals from office by the General Assembly to cases of removal for official dereliction or other sufficient cause. The section is as follows : " The General Assembly shall, in addition to other penalties, provide for the removal from office, of county, city, town, and township officers, on conviction of wilful, corrupt, or fraudulent violation or neglect of official duty."

In our view, it is a strange misapplication of terms, to call this provision, in any sense, a limitation upon the powers of the General Assembly. It neither confers nor limits any power. It simply imposes a duty. It assumes that the power exists in the General Assembly, of provid-

ing for the removal of certain officers in certain cases, and commands that the power be exercised for the cases specified. To hold that a law which directs the exercise of a certain power in specified cases must be construed to mean that such power shall never be exercised in any other case, would be to adopt a formula of interpretation which we are not now prepared to accept.

Whatever may be said about legislative removals from offices created by the constitution, it has long been settled in this state that, as to any office created or established by statutory law, the legislature may modify or abolish it at pleasure. Such an office in Missouri, is that of a notary public. The fact that it is mentioned incidentally in the constitution does not make it a constitutional office, in the sense of being beyond the legislative control. It is simply not unconstitutional; that is, its creation by the legislature can incur no constitutional censure, of itself. But that is a very different thing from an office which the constitution itself establishes and whose tenure and other incidents are so defined as to forbid legislative modification. The office of notary public is left by our constitution to the wisdom of the legislature, for its creation, regulation, or abolition, as may be found most consistent with the public welfare. Where the power to abolish an office exists, there can be no question of the right to take it away from a certain class of incumbents, provided this is not done in a way that may be open to the objection of special legislation against individual members of an entire class. We have already shown that the act before us is not obnoxious to this objection.

We have carefully examined all the authorities cited for the defendant, and fail to find that any one of them, when properly applied, sustains the positions which are very ably contended for by the counsel in that behalf. If time permitted, we think it would be easy to demonstrate that, as to nearly all of them, the underlying principles are directly

hostile to those positions. We are not able to discover any valid constitutional objection to the act under consideration.

It follows that the demurrer to the answer must be sustained, and judgment of ouster will be entered against the defendant.

Judge THOMPSON concurs; Judge BAKEWELL concurs in the result, but has not seen this opinion.