ATTORNEY GENERAL v. COGSHALL.

1. MUNICIPAL CORPORATIONS—CONSTRUCTION OF CHARTER—SUPER-
VISORS—CREATION OF BOARD OF ASSESSORS—DUTIES.

Act No. 444, Local Acts 1895, amendatory of the charter of Grand Rapids, which took effect May 27, 1895, abolished the office of supervisor in said city, and provided for a board of assessors, which, "upon the taking effect" of said act, should perform the duties theretofore discharged by the ward supervisors in respect to the assessment of taxes; that, on the 1st day of October following, the board of review and equalization, as then constituted, should become vested "for the time being" with the powers of such board of assessors, and should perform its duties; that, as the terms of its members should expire, the mayor should appoint their successors; that, "when a board of assessors shall be appointed," the supervisors should cease to perform the duties conferred upon such board, but

should continue to act as members of the county board of supervisors until the expiration of their several terms of office, after which the aldermen should represent their several wards upon the board; and that at such time, "or as soon as said board of assessors is appointed and its members have qualified," said supervisors should deliver to it all of the original assessment rolls in their possession, which should thereafter remain in the office of such board, and become a part of its official records. It was expressly provided that the board of assessors should make the assessment for the year 1896, which, under the charter, was required to be completed before the date at which the terms of the supervisors then in office would expire. *Held*, that it was the duty of the board of review and equalization, acting as a board of assessors, and not that of the supervisors, to spread the general taxes for the year 1895, the language of the two clauses last quoted being construed as though reading, "as soon as said board of assessors *is constituted* under the provisions of this act."

2. SAME—OFFICE OF SUPERVISOR—CONSTITUTIONAL LAW—LOCAL SELF-GOVERNMENT.

The office of supervisor in cities, not being created by the Constitution, may be abolished by the legislature at will, and its functions conferred upon other municipal officers; and the fact that, in the exercise of such power, an officer is divested of a part of the functions of his office before the expiration of the term for which he was elected, and that such functions are conferred upon city officials elected for another purpose, does not render the act invalid as an attempted interference with the right of local self-government.

3. SAME—REDUCING NUMBER OF ALDERMEN—DISCRIMINATION.

A city charter provided for the annual election of one alderman from each ward for a term of two years. For the purpose of reducing the number of aldermen, and at the same time preserving the term of office and the practice of electing but one-half of the aldermen each year, it was provided by amendment that at the next election one alderman should be elected from each even-numbered ward for a term of two years; that in each odd-numbered ward the alderman whose term was unexpired should hold until the end of his term; and that, at the expiration of the term of office of each alderman, his successor should be elected for a term of two years. *Held*, that the amendment was not invalid as unjustly discriminating against the even-numbered wards, in that aldermen elected therefrom for a term of two years were removed from office after one year's service.

*Mandamus* by Fred A. Maynard, Attorney General, against George E. Cogshall and others, composing the board of assessors of the city of Grand Rapids, to compel respondents to demand and receive from the several supervisors of said city the assessment rolls for the year 1895, and to spread the taxes thereon. The ward supervisors were allowed to intervene. Submitted November 8, 1895. Granted November 26, 1895.

*Fred A. Maynard,* Attorney General, for relator.

*Henry J. Felker,* City Attorney, for respondent assessors.

*Taylor & Eddy,* for respondent supervisors.

McGRATH, C. J. Hitherto each ward in the city of Grand Rapids has annually, at the spring election, elected a supervisor and an alderman, the latter for two years and the former for one year. Taxes have been assessed and spread by the supervisors, and the charter provided for a board of review and equalization, composed of three members, one of whom has been elected annually by the city at large. The charter was amended in 1895 (Act No. 444, Local Acts 1895), with a view to the election of six aldermen by the city at large, the reduction of the number of the aldermen to one from each ward, but at the same time to preserve the term of two years and the practice of electing but one-half of the aldermen each year, the creation of a board of assessors, and the abolishment of the office of supervisor. To accomplish these ends, the amended charter provides for the election by the city at large, at the next spring election, of three aldermen for the term of two years and three for the term of one year, and, at each succeeding election, of three aldermen for the term of two years; that at the same election one alderman shall be elected in each ward designated by an even number for a term of two years, and in each ward designated by an odd number the alderman whose term is unexpired shall hold his

office until the end of his term, and at the expiration of the term of each alderman his successor shall be chosen for a term of two years. It provides for a board of assessors to perform the duties heretofore discharged by the supervisors in respect to the assessment of taxes, and confers the other duties heretofore discharged by the supervisors upon the aldermen. It confers the powers of a board of assessors upon the board of review and equalization "for the time being," and enacts that, as the terms of the members thereof shall expire, the mayor, upon the confirmation of the council, shall appoint a successor for a like term. The act was given immediate effect May 27, 1895. A dispute has arisen as to whether, under this amendatory act, it is the duty of the supervisors or the board of assessors to spread the taxes for the present year.

Sections 26 to 30 of title 11 of the act are as follows:

"Sec. 26. In all matters not herein specially provided for, the provisions of the original charter of the said city of Grand Rapids, as revised and amended, and now in force, relating to the assessment of taxes within the corporate limits of said city, and the collection of the same, and the disposal of the moneys received therefrom, shall be and remain in full force and effect, if not inconsistent with the provisions of this act.

"Sec. 27. All of the provisions of the general State laws in relation to the making of assessment rolls, and the persons or property to be therein taxed, not inconsistent with the provisions of this act, which at present are performed and executed by the respective supervisors of the several wards of said city, shall, upon the taking effect of this act, be performed and executed by the board of assessors herein created, and the members of said board of assessors shall be *ex-officio* members of the board of supervisors of the county of Kent.

"Sec. 28. On the first day of October, eighteen hundred ninety-five, the members of the board of review and equalization, as now constituting the present board of review and equalization of said city, shall become vested, for the time being, with all the powers herein conferred on such board of assessors, and it shall discharge all the

duties of such board of assessors herein provided for until such time as is specified in the following section.

"Sec. 29.    Whenever the term of office for which any member of the present board of review and equalization of said city was elected shall expire, a member thereof shall be appointed in his place, for the term hereinbefore provided, by the mayor of said city, and be confirmed by the common council thereof; and such member of said board of assessors shall act in conjunction with the remaining member or members of the present board of review and equalization, as hereinbefore constituted such board of assessors of said city, in discharging all the duties of such board of assessors herein provided for. After the expiration of the term of office of the last remaining member of the present board of review and equalization, the members of such board of assessors, herein provided for, shall continue to be appointed as above provided.

"Sec. 30.    At the expiration of the term of office of the several supervisors of the respective wards of said city of Grand Rapids, or as soon as said board of assessors is appointed and its members have qualified, said supervisors shall each of them deliver all of the original assessment rolls in their possession by virtue of their office to said board of assessors, and thereafter such assessment rolls shall remain in the office of said board of assessors, and become a part of the official record of the same."

It is insisted by respondents that the supervisors continue in office under the act until the expiration of their respective terms. The spring election is held on the first Monday of April. City officers, both elective and appointive, hold their offices, under the charter, from the first Monday in May. The value of property subject to taxation is, by the new act, to be ascertained and fixed before the second Monday in April; and the amended charter expressly provides that the board of assessors created by the act shall make the assessment for the year 1896, and shall publish notice of the completion of the assessment 10 days prior to the first Monday in April. Section 3 of title 4 provides that—

"The alderman in each ward, after the annual election in April, eighteen hundred ninety-six, shall represent their several wards upon the board of supervisors of the county, and perform all the duties pertaining to supervisors of the townships upon such board, and shall have all the rights, privileges, and powers of the several members of such board of supervisors. They shall select and return lists of grand and petit jurors to the clerk of the county in the same manner and within the same time as the like duty is required to be performed by township officers.  *  *  *  The ward supervisors in office at the date this act takes effect shall, until the expiration of their term of office for which they were elected, continue to act as members of the board of supervisors of the county of Kent, after which date the ward aldermen shall be such supervisors from the wards as above specified, and perform all the duties pertaining to their offices, except that, when a board of assessors shall be appointed, said supervisors shall cease to perform such duties as are conferred on said board of assessors and heretofore performed by said supervisors."

Evidently the conversion of the board of review and equalization into a board of assessors was not contemplated when this act was originally prepared, but the appointment of a new board was designed, and the difficulty grows out of a change of purpose in this respect, and the failure to change the text of section 30. The act clearly defines the duties which are to be performed by the supervisors after the act shall take effect, and before the expiration of their terms of office. On the other hand, the act fixes the date when the board of review and equalization shall become vested with the powers conferred upon such board of assessors. It is significant that the date given is fixed immediately prior to the session of the board of supervisors, and prior to the time when the State and county taxes are spread upon the rolls. The language used in section 30, "as soon as said board of assessors is appointed, and its members have qualified," cannot be held to mean after the members of the present board of review and equalization have retired, and their successors have qualified, but

must be given the same meaning as the language "when a board of assessors shall be appointed," in section 3 of title 4, and construed as referring to the time when the persons acting as such board become vested with the authority to act, and as if reading, "as soon as said board of assessors is constituted under the provisions hereof."

It is, however, insisted on behalf of the supervisors, who have been allowed to intervene, that the amendatory act is unconstitutional, in that it interferes with the right of local self-government. It is said that in the even-numbered wards aldermen elected for two years from the first Monday in May, 1895, are removed from office after one year's service, yet the office of alderman is not abolished; that in the odd-numbered wards persons elected as aldermen are made *ex-officio* members of the board of supervisors; that the legislature has undertaken to divest duly-elected supervisors of certain of the functions of their office, and confer the same upon a board, the members of which were elected for another purpose.

The office of supervisor in our cities is created by the legislature. It may either exist or not, at the legislative will. Having this authority, the right of the legislature to abolish that office and confer its functions upon another officer cannot be questioned. A supervisor in a city is not as essential as in a township, and the mere fact that an officer of the city government is denominated a "supervisor" does not take away from the legislature the power to abolish the office, or transfer its functions to another city official. The title to the office may indicate the measure or scope of the duties of the officer, but it does not afford the officer any protection from legislative interference that is not afforded to other city officials. The Constitution nowhere requires the election by cities of a supervisor, but it makes it the duty of the legislature to provide for the incorporation and organization of cities and villages, and gives to cities such representation in the board of supervisors as the legislature

may direct. Article 10, § 7. The rule laid down by Mechem on Public Officers (section 465) is that the legislature may declare the office vacant, or may transfer its duties to another officer, although the effect may be to remove the officer in the middle of his term, or to abolish his office by leaving it devoid of duties. *Fuller* v. *Attorney General*, 98 Mich. 96. In the present case the duties of the supervisors have been in part transferred to an existing board, the members of which have been elected by the electors of the city, and in part to aldermen, who have likewise been elected. It is not an attempt by the legislature to appoint to office, but a simple transfer of functions heretofore exercised by one official to others, who have been chosen as officials by the same constituency. Like transfers are not uncommon, and it cannot be that no new function can be imposed upon an officer without a new election in order that the electors may pass their judgment as to the efficiency of the officer respecting the performance of such new duties.

There is no force in the contention that the legislature has discriminated in favor of the odd-numbered wards. Offices are created for the public, and not for private, benefit. To reduce the number of aldermen, and at the same time preserve the term, the legislature, instead of providing for the election of an entire new board, in which the aldermen elected in the odd-numbered wards should serve for one year and those in the even-numbered wards should serve for two years, enacted that the aldermen in the odd-numbered wards should serve out their terms, and in the even-numbered wards the term of the aldermen elect should be two years. The even-numbered wards have no cause to complain because an election was not ordered in the other wards. They have been deprived, it is true, of the services of experienced aldermen, but they possess the power to re-elect.

The writ must issue as prayed.

The other Justices concurred.