## REALS, COUNTY TREASURER, v. SMITH.

CONSTITUTIONAL   LAW — OFFICERS — COUNTY   ASSESSORS — QUO WARRANTO.

1.   While a claimant to an office exercised by another is permitted by the statute to bring an action of quo warranto without first obtaining leave of court, it would seem that the same should be prosecuted in the name of the State on the relation of the claimant, under tho provisions of Section 3092, Rev. Stat. of 1887.

2.   A statute relating to persons or things as a class is a general law; and the Act of 1899 (Ch. 65, Sec. 5) providing for the office of county assessor is a general law, and not special or local.

3.   The term "emolument," as used in Section 32 of Article 3 of the constitution, which prohibits any law from increasing or diminishing the salary or emolument of any public officer after his election or appointment, comprehends a gain, profit, or advantage pecuniary in character.

4.   The Act of 1899 (Ch. 65, Sec. 5) which separated the office of county assessor from that of treasurer, and thereby took from the treasurer the duty theretofore devolving upon him of appointing deputy assessors, the salary of the treasurer remaining the same as before, did not have the effect to decrease that officer's emoluments, as the matter of appointment of deputies is not within the meaning of Sec. 32 of Art. 3 of the constitution an emolument of the office.

5.   An office, even if it be a constitutional office, may be abolished at any time by a new constitution, or by the amendment of the existing one.

6.  A public office is not a contract, either express or implied, nor a grant, nor to be regarded as the property of the incumbent.

7.  In the absence of constitutional restrictions, offices which are legislative only, and not constitutional, may be abolished or changed at the pleasure of the Legislature; and the duties thereof may be increased or diminished, and the rights and privileges thereof varied, increased, decreased, or abolished; and, in general, subject to constitutional provisions or prohibitions, the authority of the Legislature over public offices is complete and absolute.

8.  The office of county assessor is not a constitutional office. The fact that it is mentioned incidentally in the constitution does not make it a constitutional office, in the sense of being beyond legislative control. Legislative control over the office is, however, absolute only so far as unrestricted by constitutional provisions.

9.  The Legislature in 1895 consolidated the offices of county treasurer and assessor, by providing that the treasurer should be ex-officio assessor, and perform all the duties pertaining to the office of assessor. At the election in 1898 relator was elected county treasurer in Albany County. During his term of office, the Legislature in 1899 separated the two offices, and provided that in 1900 an assessor should be elected in each county, and in 1899 the commissioners of each county should appoint an assessor for that year, and in 1900 should appoint an assessor for the year 1900. *Held*, that the Act of 1899 was valid and constitutional as against the objection that the effect of the Act was to remove the person elected treasurer from the office of assessor. *Held*, further, that the assessorship was merely an incident of the office of treasurer, and the duties of assessor having been attached to the office of treasurer by legislative enactment, the Legislature could relieve the treasurer's office of such added duties, and repeal the law consolidating the two offices, at its pleasure; and the statute which was designed to accomplish that object is not, in that respect, obnoxious to the constitution.

10.  The Legislature having lawfully restored as an independent office, the office of assessor, the office became *ipso facto* vacant.

11.  Although the constitution has declared that the Legislature shall provide by law for the *election* of such county officers as may be necessary, the Legislature may provide for filling vacancies in county offices by appointment; and the

provision that the incumbent of the new office of assessor shall be selected by appointment until the next general election, is not an unreasonable one.

12. Section 5 of Chapter 65 of the Laws of 1899 is constitutional and valid.

[Decided April 3, 1899.]

RESERVED questions from the District Court, Albany County Hon. CHARLES W. BRAMEL, Judge.

Quo Warranto, to determine the title to the office of County Assessor of Albany County. The facts are stated in the opinion.

*S. W. Downey*, for relator.

Section 5 of the Act of 1899 relating to the appointment of assessors for the years 1899 and 1900 is a special law, and interrupts the uniform operation of the general election laws; as the relator was elected in 1898 county treasurer and ex-officio assessor. If Section 5 is invalid, the whole Act must fall, as it is entire, and embraces a single scheme for the assessment of property for taxation. (Suth. Stat. Const. Secs. 284, 174, 175, 180; State ex rel. City of Cheyenne v. Swan, 7 Wyo., 166.

The new Act which deprives the treasurer of the office of assessor, while it allows his salary to remain the same, takes from him the appointment of deputies. The word " emolument " is used in the constitution in addition to the word " salary," and would seem intended to cover more than salary or fees. (Appel v. Crawford Co., 105 Pa. St., 300.)

*Stephen Corlett Downey*, for respondent.

The Legislature had the power to repeal the Act consolidating the office of assessor with that of treasurer. The law doing so and providing for a separation of the two offices is neither special nor local, but has a general and uniform operation throughout the State. (Suth. Stat. Const., Sec. 120, 121.) The Act operates upon all

assessors in the State, and while assessors may be classed as particular persons, they are officers of the State, and have charge of the lawful assessment of all property throughout the entire State, and hence the law providing for their appointment is a general one, and not special. The provision for appointment until the next regular election is not invalid.   A vacancy existed the instant the office became a separate one, as it had no lawful incumbent.   (State ex rel. Richardson v. Henderson, 4 Wyo., 535; In re Fourth Jud. Dis., id., 113.)   The powers of the Legislature are absolute except as restricted by the constitution.

The late enactment is in harmony with the general election law, and does not interrupt its uniform operation. The provision is made for the election of assessors at the next election.   If Section 5 is held invalid, it does not follow that the remainder of the Act must fall.   The treasurer as ex-officio assessor would be authorized to discharge all the duties of the assessor.

The claim that the emoluments of the treasurer as formerly ex-officio assessor have been decreased is not sound.   The salary of the officer remains the same.

Where an office is created by statute, in the absence of constitutional prohibition, it may be entirely abolished, the manner of filling it altered, the compensation changed, its duties diminished or decreased at will of the Legislature.   (Mechem on Pub. Off., Sec. 465.)

All statutes are to be construed so as to sustain rather than ignore or defeat them.

POTTER, CHIEF JUSTICE.

This is an action in the nature of quo warranto to try the title to the office of county assessor of Albany County. The questions reserved for our decision by the district court arise in the case upon its submission under an agreed statement of facts after issues were joined by petition and answer.

The suit is brought in the name of the person claiming

the office instead of in the name of the State on the relation of said claimant.

The defendant, however, interposed no objection on the ground of defect of parties, probably for the reason that an early decision on the merits of the questions involved were desired by all parties interested therein.

We are not, therefore, called upon to decide whether the practice employed as above in this case is proper or not, but to guard against any possible construction in its favor which might result from our silence, we have deemed it not unwise to advert to the matter.    We have only to suggest that it would seem that while Section 3096, Rev. Stat. 1887, permits a claimant to an office exercised by another to bring the action of quo warranto, without first obtaining leave of the court (34 O. St., 365), the same should be prosecuted in the name of the State on the relation of the claimant under the provisions of. Section 3092.    If the matter shall be deemed by the parties of sufficient importance, the defect, if any, can be remedied in the district court.

The claimant, who is the named plaintiff in the action, is referred to in the briefs as the relator, and in this opinion he will be so designated.    It will be unnecessary to review the allegations of the pleadings.    The agreed statement covers all the facts which are material.    That statement is as follows:

"Come now the attorneys for the above-named plaintiff and defendant, and agree to the following statement of facts:

First, That at the general election held in the county of Albany, State of Wyoming, on the first Tuesday after the first Monday in November, A. D. 1898, for the election among other officers of county treasurer and ex-officio assessor of said county, the plaintiff, the said Charles A. Reals, was duly elected to discharge the duties of said office, including the duties of assessor; that he is now and was then a legal and qualified elector of said county, and eligible to office; that the term for which he was

elected is from the first Monday in January, A. D. 1899, for the term of two years, and until his successor is elected and has qualified; that he took the oath of office as required by law, and filed the bond required by law as such assessor, the said bond being in the sum of five thousand dollars, and that said bond was duly approved by the board of county commissioners of Albany County; that thereupon he entered upon the duties of such office of county treasurer and ex-officio assessor according to law.

Second, That said Dwight P. Smith was duly appointed to the office of assessor by the board of county commissioners of Albany County on the 10th day of March, A. D. 1899, under an Act providing for county assessors, their appointment, compensation, and duties, known as Chapter 65 of the Laws of Wyoming, passed by the Fifth Legislature of the State of Wyoming, and which said law was approved February 20, 1899; that the said defendant duly qualified under such appointment, took the oath of office, executed the bond required by law, which said bond was approved by the board of county commissioners of said Albany County according to law.

Third, It is understood and agreed that the sole question to be determined in this case is the constitutionality of Section 5 of Chapter 65 of the Laws of Wyoming, passed by the Fifth Legislature of the State of Wyoming, approved February 20, A. D. 1899, and the constitutionality of the entire law, or any part of the same."

The Legislature by Section 2 of an Act approved February 16, 1895, consolidated the offices of treasurer and assessor, accomplishing the same by the use of the following language: "The county treasurer in all counties shall be ex-officio county assessor, and shall perform all the duties pertaining to the office of county assessor." That Act expressly provided that its provisions should not affect any county officer then in office, but should control in determining what county officers should be elected at the next following general election.

At the next election held in 1896 in each county a treasurer was elected, and during the years 1897 and 1898 such treasurers performed the duties of assessors pursuant to the said Act of 1895.

Prior to 1895, and also previous to the adoption of the constitution, there was a separate office of county assessor, whose duties were defined by law. The constitution provides that, "Whenever practicable the Legislature may, and whenever the same can be done without detriment to the public service, shall consolidate offices of State, county, and municipalities respectively, and whenever so consolidated, the duties of such additional office shall be performed under an ex-officio title." (Art. XIV, Sec. 6.) Thus the Legislature possessed express power, if it would not have been implied, to consolidate the two offices herein named.

At the recent session of the Legislature, Section 2 of the Act of 1895, attaching the duties of assessor to the office of treasurer, was repealed, and it was enacted that there shall be in each organized county an assessor who shall hold his office for two years except as otherwise provided in the Act, and until the election and qualification of his successor according to law. . Such assessor is required to take an oath of office and furnish an official bond in the sum of five thousand dollars to be approved by the board of county commissioners. That Act will be known as Chapter 65 of the Laws of 1899, and was approved February 20, 1899, and took effect at once.

Section 5 of the Act reads as follows: "The county assessor provided for in this Act shall be elected at the general election, to be held in the year 1900, and at each general election thereafter, at the same time and in the same manner as other county officers are elected. The board of county commissioners of each county shall, at its meeting in March or April, 1899, appoint a county assessor, for the year 1899, who shall make the assessment for the year 1899, under the provisions of this Act. The board of county commissioners of each county shall

at its meeting in January, 1900, appoint a county
assessor for the year 1900, who shall make the assess-
ment for the year 1900, under the provisions of this
Act.''

Other sections of the Act provide for the assessor
as aforesaid, fix his compensation, and prescribe certain
duties to be performed by him in relation to the assess-
ment of property for taxation.

The relator Reals was elected county treasurer in
1898, while the law of 1895 was in force, constituting
that officer ex-officio county assessor. When he qualified
and entered upon the discharge of his duties, that law was
still in force; but the time for making the annual assess-
ment had not arrived, and will not arrive until the first
Monday in April, 1899, at which time he is to be fur-
nished with the assessment roll. (Rev. Stat., Sec. 3795.)
By Section 3796 the assessor was required to enter upon
the discharge of his duties as soon as provided with such
assessment roll. The late enactment makes a similar pro-
vision. (Sec. 6.)

The defendant was appointed assessor for 1899, in obedi-
ence to the requirements of Section 5 aforesaid of the Act
of 1899. His right to occupy the office and discharge its
duties is challenged in this proceeding.

The first point urged by counsel for the relator is that
the late enactment is invalid as violating the constitutional
prohibitions against the enactment of local or special laws.
We do not think the Act is either a local or special law.
It is said that laws are '' general because their subject
matter is of common interest to the whole State, and not
local; because the provisions embrace the whole subject
or a whole class of it. Not being confined to a part they
are not partial or special. The State contains a great
variety of subjects of legislation, each requiring pro-
visions peculiar to itself. Generic subjects may be
divided and subdivided into as many classes as require
this peculiar legislation. Thus laws relating to the peo-
ple, for certain purposes, extend to all alike, as for protec-

tion of person and property; for other purposes they are divided into classes, as voters, sane and insane persons, minors, husbands and wives, parents and children, etc. Property is subject to division into classes.   Nearly every matter of public concern is divisible, and division is necessary to methodical legislation.   A statute relating to persons or things as a class is a general law.''   Sutherland on Stat. Const., Sec. 121.   The Act is a general law, and its operation is uniform throughout the State.

The other objections urged against the constitutionality of the statute, and particularly of Section 5 aforesaid, are:

First, That the uniform operation of the general election law is interrupted; such objection being grounded upon the contention that the relator has been regularly elected to the office of assessor, and the recent enactment has the effect to remove him therefrom and substitute another incumbent by appointment, while, it is insisted, that county officers are, by the constitution, required to be elected; and

Second, that the statute has the effect to decrease the emoluments of the relator, and is therefore in violation of Section 32 of Article 3 of the constitution, which provides as follows:

''Except as otherwise provided in this constitution, no law shall extend the term of any public officer or increase or diminish his salary or emolument after his election or appointment.''

When the law of 1895 added the assessor's duties to those of the treasurer, the salary of the latter as treasurer was not increased.   Thereafter as before he received the salary attached by law to the office of treasurer only, but performed the duties of both offices.   It is to be observed that the new statute does not reduce or decrease that salary; the duties of assessor are taken from him, but his salary remains the same.   It is argued, however, that as ex-officio assessor he was required to appoint deputy assessors in the various assessing districts in his county.   On the same day that the Act was approved consolidating the

offices of assessor and treasurer, another Act was approved
providing for deputies in certain county offices and regu-
lating their compensation and duties. By that Act the
county commissioners were required each year to divide
their county into assessing districts not exceeding ten nor
less than three, and the treasurer as ex-officio assessor was
required to appoint, with the approval of the board, a
deputy assessor, resident in such district, to assist in mak-
ing the assessment in that district; and such deputies were
allowed a per diem compensation, subject to a maximum
limitation. None of this compensation was payable to the
treasurer. It is, however, contended that the privilege
of the appointment of deputy assessors constituted an
emolument within the meaning of the constitutional inhi-
bition aforesaid.

Emolument is generally defined as " the profit arising
from office or employment; that which is received as com-
pensation for services, or which is annexed to the posses-
sion of office, as salary, fees, and perquisites; advantage;
gain, public or private." Am. & Eng. Ency. L., 2d.
ed., Vol. 10, p. 1204.

The gain, profit, or advantage which is contemplated in
the definition or significance of the word " emolument ",
as applied to officers, at least as the word is employed in the
constitutional provision aforesaid, clearly comprehends,
we think, a gain, profit, or advantage which is pecuniary
in character. If it applied to the appointment of deputies,
no law could, during an official term, either furnish a
deputy where none had been previously authorized, or
increase the force of deputies and assistants in case the
same should be demanded by the exigencies of the public
business, or decrease the number thereof in proper cases.
The constitution has reposed in the Legislature full con-
trol over the matter of deputies by providing that it shall
provide by law for such deputies as the public necessities
may require. (Art. XIV, Sec. 4.) This is a constitu-
tional construction of the term " emolument " adverse to
the contention of relator.

Another provision requires that county officers shall

receive fixed and definite salaries.   (Art. XIV, Sec. 1.)

We do not think that the statute has the effect to decrease the officer's emoluments.   A similiar conclusion was announced in Tulare County v. May et al. (California), 50 Pac., 427, where it was held that a law providing for the appointment of deputy county officers by the principal, and payment of their salaries out of county funds did not conflict with a constitutional provision forbidding any increase of compensation after election of public officers, as the law did not have the effect to increase their compensation.

A more serious question arises from the fact that the relator had been duly elected as county treasurer and had duly entered upon the discharge of the duties thereof while that officer was by law ex-officio assessor.

It is urged by counsel for relator that the latter was in legal effect elected to the office of county assessor, and that the practical effect of the late statute is to remove him from that office and fill the same for two years by appointment, and the cases of Territory v. Ritter, 1 Wyo., 318, and ex parte Bergman, 3 Wyo., 396, are relied on.   In the former case it was held that where the judge of probate is made by express statute ex-officio county treasurer two distinct offices are thereby created, and that where the condition of the bond executed by the judge of probate is only for the faithful discharge of the duties of judge of probate per se, the sureties on said bond are not liable for the failure of the judge of probate as ex-officio county treasurer to perform the duties of county treasurer required by law.   The Bergman case was one for contempt growing out of the neglect or refusal of the probate judge to deliver his books and records to the district court in obedience to the requirement of the constitution which had invested the district court with probate jurisdiction, and required the transfer of all probate records to that court. The opinion in that case referred to the Ritter case, and stated that Bergman, who had been elected as judge of probate, still retained the office of county treasurer.

These cases do not reach the question involved in the

case at bar. And it must be remembered that the statute assailed as unconstitutional does not deprive the relator of the principal office to which he was elected. The Bergman case, while not precisely in point, does go to the extent of recognizing the right of the people by their constitution to deprive an officer of one of the offices — and that the principal one in name — to which he had been previously elected. An office, even if it be a constitutional office, may be abolished at any time by a new constitution or by the amendment of the existing one. (French v. Com., 78 Pa. St., 339.)

The principle is firmly established in the jurisprudence of this country that a public office is not a contract either express or implied, nor a grant, nor to be regarded as the property of the incumbent.

It is also well settled, and we understand it to be conceded, that in the absence of constitutional restrictions, offices which are legislative only and not constitutional, may be abolished or changed at the pleasure of the Legislature; and the duties thereof may be increased or diminished, and the rights and privileges thereof varied, increased, decreased, or abolished. And, in general, subject to constitutional provisions or prohibitions, the authority of the Legislature over public offices is complete and absolute. Lee v. Board of Com'rs, 3 Wyo., 52.

Respecting an office not mentioned in the constitution it was said in Pennsylvania, "Not having been mentioned in the constitution, the Legislature was left with unrestricted power to prescribe what the. duties of the office should be, what the length of its tenure, what its emoluments, and how it should be filled. Having the power to create, they have also the power to regulate, and even to destroy. Undoubtedly the Legislature may at any moment repeal the Act of 1850, and abolish the office. They may provide a substitute for it. * * * It was never intended to put offices created by the Legislature beyond the control and regulation of the creating power. It was not intended to ordain that an office for a term of years

once made, should not be modified or abolished, while the term remained unexpired.'' Commonwealth v. Mc Combs, 56 Pa. St., 436, and quoted with approval in Commonwealth v. Weir, 165 Pa. St., 284. In the case of Commonwealth v. Mc Combs an Act of the Legislature was held valid which created the office of assistant district attorney and transferred to it some of the duties and fees formerly belonging to the office of district attorney.

What the people may do by an original or new constitution, the Legislature may do with reference to public officers except as restricted by constitutional provisions.

The office of county assessor is not a constitutional office. It is mentioned but once in that instrument, and then only by placing a maximum limit upon the salary which may be paid to such an officer, in connection with like limitations upon salaries for other specifically named county officers; but in the same article it is provided that any county officers performing the duties usually performed by the officers named in the article shall be considered as referred to by the section embracing said limitations regardless of the title by which their offices may thereafter be designated. Art. 14, Secs. 3 and 5. Thus clearly recognizing legislative control over such offices.

The fact that an office is mentioned incidentally in the constitution does not make it a constitutional office in the sense of being beyond legislative control. State ex rel. v. Hermann, 11 Mo. App., 43.

It is, moreover, further provided that, ''The Legislature shall provide by law for the election of such county officers as may be necessary. Art. 12, Sec. 5. This provision expressly delegates to the Legislature absolute authority over the matter of the creation of county offices. It is probably true that the Section requires such offices as are covered thereby to be made elective by the people, but, as it will appear later on, a decision upon that precise question is not necessary. Such legislative authority, however, is absolute only so far as unrestricted by other constitutional provisions. The only restrictions upon that

authority are those found in Section 32 of Article 3 already alluded to. They prohibit the extension by law of the term of a public officer and the increase or decrease of his salary or emolument after his election or appointment.

Neither of the acts so prohibited are attempted or accomplished by the statute under consideration.

These restrictions of the Section last cited, together with the possible requirement that county officers shall be elected, and for the purposes of this case it may be assumed that they are required to be elected, are the only ones controlling the action of the Legislature in respect to the creation and regulation of county officers, so far as concerns the questions presented in this case.

Had the office of assessor remained as a separate and distinct office with an incumbent elected as such to perform the duties thereof and no other, then, upon the assumption that the office is, under the constitution, an elective one, a very serious question would arise had an attempt been made to legislate him out of office by a law continuing the same and identical office, but filling the same by appointment during the term for which the incumbent had been elected. In such case the argument of counsel that the law amounts to an evasion of the constitution requiring such officer to be elected by the people, would assume much force.

But the possibility of such a contingency is practically avoided by the prohibition against decreasing an officer's salary or emolument after his election.

Moreover, while, in a sense, the office remained after the enactment of the law of 1895, it ceased to exist as a separate and independent office. The law of 1895 was, by its terms, to be considered in determining the officers to be elected at the next following general election, which clearly meant so far as this office was concerned, that no assessor should be elected, but that a treasurer should be, and upon him was imposed the assessor's duties. Those duties are not ordinarily connected with the office of treas-

urer, hence that office — the principal one held by relator — has not been divided.

We do not therefore regard the statute as having evaded the constitution in the respect claimed.    The better and more reasonable view of the situation is that the Legislature has merely taken away from the office of treasurer some duties, ordinarily independent thereof, which had for a time been attached thereto.

The assessorship was merely an incident of the office of treasurer, and this fact clearly distinguishes the present case from that of Warner v. People, 2 Denio, 272, where a law was adjudged invalid because it separated from the office of clerk of the city and county of New York, the clerkship of the court of common pleas, the duties of which latter office had for many years been performed by the city and county clerk, and which, in fact, comprehended the main part of his duties and furnished the largest share of his emoluments.    The act had created an independent office of clerk of court, the incumbent thereof to be appointed by the court, and the decision was placed squarely upon the ground that the court clerkship constituted an integral part of the office to which the person occupying the office of city and county clerk had been elected.

In the case of the People ex rel. v. Squires, 14 Cal., 13, the sheriff was ex-officio collector of foreign miners' licenses.    A law was enacted providing that the sheriff shall cease to collect said tax, and requiring the supervisors to appoint a collector of said taxes in each township, to hold office for one year.    Although the office of sheriff was a constitutional office, the term and duties thereof were not prescribed by the constitution.    The Act was held constitutional.    In the opinion it was said, "The vesting of this office" (collector as aforesaid) "in the sheriff being by legislative Act, though the office can not be destroyed by the Legislature, yet the Legislature, not restricted in this respect by the constitution, may direct in what manner the duties shall be discharged, and how the office may be temporarily filled."    "We regard the

Act of the Legislature giving this office to the sheriff, as a mere legislative transfer to this officer of the duties of tax collector, and that the same power which placed them in the hands of the sheriff, could divest them and place them in other hands." The opinion also stated that the provision for appointment by the supervisors, even if the office was an elective one, would be good at least until a general election.

Denver v. Hobart, 10 Nev., 28, was a case involving the constitutionality of a statute repealing a former one under which the lieutenant-governor was ex-officio warden of the State prison, and providing for the appointment of a warden by the prison commissioners. The Act assailed contained provisions fixing the salary of the lieutenant governor at a sum deemed to be equivalent to the compensation which he would have received as ex-officio warden. The points urged against the new statute was that the ex-officio officer was illegally removed because the office of warden was not abolished, and he had not been removed by impeachment for malfeasance or misfeasance in office. The Act was held valid and constitutional. The court said, "So far as the office of ex-officio warden existed in relator, it was an office created by legislative Act. The Legislature might at any time direct how it should be filled, what compensation should be allowed, and provide the manner in which its duties should be discharged. In such cases, the length of the term of office is regulated by considerations which affect the public interest, without any regard to the interests of the office-holder." The court said further, ".The Legislature having vested certain duties upon the lieutenant-governor, and allowed him a salary for his services, it was within the power of the Legislature to take those duties and the salary away from him before the expiration of his term of office, and confer them upon another." See also Attorney-General v. Cogshall, 107 Mich., 181; People ex rel. v. Van Gaskin, 5 Mont., 352; State ex rel. v. Davis, 44 Mo., 129.

The duties of assessor having been attached to the office of treasurer, or the office having been consolidated with that of treasurer by legislative enactment, the Legislature could relieve the treasurer's office of such added duties, and repeal the law consolidating the two offices, thereby divorcing them at its pleasure, subject to the restrictions already noted; and the statute which was designed to accomplish that object is not, in that respect, obnoxious to the constitution.

Having authority to take the duties away from the office of treasurer, and restore as independent the office of assessor, and having done so by the Act in question, the office became *ipso facto* vacant. In re Fourth Judicial District, 4 Wyo., 133. An office is vacant when there is no lawful incumbent occupying it. State ex rel. v. Henderson, 4 Wyo., 535.

Although the constitution has declared that the Legislature shall provide by law for the *election* of such county officers as may be necessary, we entertain no doubt but that it may provide for filling vacancies in such offices by appointment. And the Legislature having determined that the incumbent shall be selected by appointment until the next general election, we observe no ground for declaring the provision an unreasonable one. The duties of assessor are such that the major part of them, if not all, are performed during a limited period of the year. It would have been extremely inconvenient if not quite impossible to have held a special election after the approval of the Act and secured an incumbent in that manner in time for the commencement of the assessment for the present year, and as is well known, the period allowed for completing the work is none too long; and we are not disposed to consider it clearly unreasonable to continue the scheme for provisionally filling the office through the succeeding year.

It having been claimed in Minnesota that county offices could be filled only by election, and that an appointment was forbidden under any circumstances, the court said,

"This construction would prevent a vacancy from being filled by appointment for the length of time which would necessarily intervene between the occurrence of a vacancy, and the first succeeding general election or even a special election. Certainly this would work great public, as well as private, inconvenience and injury, and in our judgment, the constitution, framed as it was for practical purposes, need not and should not receive a construction so narrow." The court further stated that if provision is made for such election at stated periods the injunction of the constitution is satisfied; and that having made such provision the Legislature is not restrained from making provision for filling vacancies by appointment until a next general election, or for the balance of an unexpired term as may be deemed advisable. Loring v. Benedict, 15 Minn., 198; State ex rel. v. Bailey, and State ex rel. v. Mahoney, 37 Minn., 174; see also Sprague v. Brown, 40 Wis., 612; People v. Hurlbut, 24 Mich., 44; State v. Harris (N. D.), 45 Pac., 1101.

We are therefore of the opinion that Section 5 of the Act, the same being Chapter 65 of the Laws of 1899, is constitutional and valid, and question number one reserved for our decision, which inquires whether said section is constitutional is answered in the affirmative.

This disposes of the necessity of deciding the remaining reserved questions.

CORN, J., and KNIGHT, J., concur.