ATTORNEY GENERAL, *ex rel.* PENNEY, *v.* GRAMLICH.

1. MUNICIPAL CORPORATIONS — REPRESENTATION ON BOARD OF SUPERVISORS — LEGISLATIVE APPOINTMENT — CONSTITUTIONAL LAW.

> Article 10, § 7, of the Constitution, provides that cities shall have such representation on the county board of supervisors as the legislature may direct. By Act No. 485, Local Acts 1901, it was provided that the aldermen of three (of the fifteen) wards of the city of Saginaw should be members of the board of supervisors, and represent the city thereon, until a

specified date. The act retained certain existing city members of the board,—among them, one supervisor elected by each ward,—the aldermen mentioned being substituted for certain other members. *Held*, that the provision was void as an attempt to confer on such aldermen authority which their constituency could not confer, amounting to a legislative appointment to office.[1] *Attorney General* v. *Cogshall*, 107 Mich. 181, distinguished.

2. SAME.

Since, with the above provision eliminated, the act would operate to reduce the representation of the city on the board,—an intent not imputable to the legislature,—the whole act must fail.

*Quo warranto* proceedings by Horace M. Oren, attorney general, on the relation of Harvey A. Penney and others, against Matthew Gramlich and others, to try the title to the offices of members of the board of supervisors of Saginaw county. Submitted February 18, 1902. Judgment for respondents March 11, 1902.

*Horace M. Oren*, Attorney General (*John F. O'Keefe* and *Humphrey & Grant*, of counsel), for relators.

*Henry E. Naegely* and *Ernest A. Snow*, for respondents.

MONTGOMERY, J. Of the respondents, five were members of the board of review, one is the recorder, and the other the city attorney, of the city of Saginaw. Under the city charter as it existed prior to June, 1901, the respondents were also members of the board of supervisors of that county, entitled and authorized to represent the city upon that board. The legislature of that year made many amendments to the charter, and among them was an act passed June 8th, which act has the following provision:

"The supervisors of the several wards of said city shall be members of the board of supervisors of Saginaw

[1] For a somewhat analogous case, see *Cook Farm Co.* v. *City of Detroit*, 124 Mich. 426, 429 (83 N. W. 130).

county, and shall perform all the duties of supervisors of townships, except as herein otherwise provided, and except as to such duties as are herein especially devolved upon other officers of said city, and shall be entitled to the same compensation as township supervisors, and to such additional compensation as hereinbefore provided. The assessor, controller, treasurer, and aldermen of the Fifth, Sixth, and Seventh wards shall be members of the board of supervisors of Saginaw county, and represent the interests of this corporation in said board, and as such supervisors shall be entitled to receive the same compensation as other supervisors for attendance upon said board: *Provided*, that the terms of the supervisors of the Fifth, Sixth, and Seventh wards, herein created, shall expire January 1st, 1903." Act No. 485, Local Acts 1901.

The relators, claiming the right to these offices under that act, demanded possession, were refused, and thereupon instituted this action in *quo warranto* to test their titles. The constitutionality of the act is assailed.

We are very clear that the legislation here involved should not be sustained. The Constitution (article 10, § 7) provides that "cities shall have such representation in the board of supervisors of the counties in which they are situated as the legislature may direct." It cannot be maintained that the legislature, under this constitutional provision, has the power to appoint supervisors to represent a city on the board. It was held in *Attorney General* v. *Cogshall*, 107 Mich. 181 (65 N. W. 2), that the legislature might provide the manner in which representatives on the board of supervisors should be chosen by the people of a city, and also that the legislature might transfer the functions of the office of supervisor to another officer, chosen by the same constituency. But that case in no way meets the question here involved.

It is undoubtedly true that the legislature may provide that the representatives of a city on the board of supervisors may be chosen by the *electors* of the various wards, or by the city at large, under this constitutional provision. If supervisors are authorized to be chosen by wards, the people of the various wards are, to the extent of the power

thus conferred, *agencies* of the city, exercising authority delegated to them, in choosing a representative to represent the *interests of the city* upon the board. It may be that a distinction might be made between the various wards of a city, and representatives upon the board of supervisors be given to the ward, or rather authority to choose representatives of the city be conferred upon the ward, with some reference to its population or property interests. But *that* does not meet the question involved in this case.

In the present case the act undertakes to confer upon the aldermen of the Fifth, Sixth, and Seventh wards the authority to act as members of the board of supervisors of Saginaw county, and to represent the interests *of the city* on said board. When these officers were chosen, there was no power in the electors of these three named wards to choose these aldermen as representatives of the city on the board of supervisors. It is true that the electors of each of these wards had authority to choose one representative on the board of supervisors, but this officer is still retained. There was no authority, when the aldermen were elected, to choose more than one representative. In the *Cogshall Case* it was held that, where power existed in the electors of a ward to choose a representative on the board of supervisors, the legislature might transfer the functions of the supervisor to the alderman of the same ward. It was said by Mr. Justice McGRATH:

"It is not an attempt by the legislature to appoint to office, but a simple transfer of functions heretofore exercised by one official to others, who have been chosen as officials *by the same constituency*."

That is not this case. In the present case the officers chosen by these wards to represent the interests of the city on the board retain their offices and their functions. The attempt, then, is by the legislature to confer upon named officers an authority which their constituents had, at the time they were elected, *no power to confer upon them.* If it were possible to do this, any number of existing offi-

cers in one of the wards might be designated to perform the important functions of supervisors. In what way this differs from a legislative appointment to office, we are unable to see.

It is said that the legislature may confer upon existing officers of the city the functions of supervisor. This is true. But in doing so it simply transfers from one officer to another, chosen, directly or indirectly, *by the same constituency*, the power previously exercised by the incapacitated officer. But in this case the constituency which chose these aldermen had no power to choose either them *or any one else* to exercise these functions; and when it is once granted that, however chosen, the supervisor who, under this section of the Constitution, is authorized to represent the city, acts on behalf of the city, we think it clearly follows that he must be an officer chosen either by the city at large *or by a constituency which had the power*, at the time he was chosen, to elect him for that purpose. That he is a representative of the city is recognized by the very language of the act in controversy, which reads:

"The assessor, controller, treasurer, and aldermen of the Fifth, Sixth, and Seventh wards shall be members of the board of supervisors of Saginaw county, *and represent the interests of this corporation in said board.*"

As it cannot be assumed that the legislature intended to deprive the city of full representation upon the board, we think the act, as it relates to this subject, cannot be sustained in part, but should be declared unconstitutional, and that judgment should be entered for the respondents.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.