STATE, RESPONDENT, *v.* BRETT, APPELLANT.

[Submitted June 25, 1895. Decided July 8, 1895.]

CRIMINAL LAW—*Prosecution by information.*—Section 8, Article III, of the state constitution, provides for the prosecution of criminal actions by information "after examination and commitment by a magistrate, or after leave granted by the court," and under this provision an information may be filed after leave has been granted by the court, without an examination and commitment by a magistrate. Either there must have been an examination and commitment, or leave of court procured, but both steps are not required.

SAME—*Same—Constitutional law.*—The proceeding authorized by section 8, Article III, of the state constitution, allowing prosecution by information with leave of court, without preliminary examination having been had, is not a deprivation of the liberty of the citizen without due process of law and does not abridge the privileges and immunities of any citizen as guaranteed by the fourteenth amendment of the constitution of the United States.

SAME—*Forgery of city warrant.*—A city warrant or order, regular on its face, and apparently drawn according to law on the city treasurer, signed by the mayor and countersigned by the city clerk, for the payment of moneys out of a specific fund, is a

draft, and is therefore the subject of forgery under section 96, Fourth Division of the Compiled Statutes, making it forgery to "falsely make, alter, forge or counterfeit any writing obligatory, draft, etc."

SAME—*Same.*—Where a city warrant purporting on its face to be good and valid for the purposes for which it was made, is altered with the intent to defraud, the crime of forgery is complete. (*State* v. *Vineyard, ante,* page 138.)

SAME—*Same—Ultra vires defense.*—On a prosecution for forgery of a city warrant, it is no defense that the city had exceeded the constitutional limit of its indebtedness at the time the warrant in question was issued.

*Appeal from First Judicial District, Lewis and Clarke County.*

CONVICTION for forgery.    The defendant was tried before BLAKE, J.    Affirmed.

Statement of the case by the justice delivering the opinion.

Defendant appeals from a conviction of forgery. The information charged that the defendant "having then and there in his possession a certain writing and warrant of the city of Helena for the payment of money, of the tenor following, to wit:

" '$7.50.                    Helena, Montana, Oct. 1, 1894.

" 'The treasurer of the city of Helena, Montana, will pay to the order of H. Mitchell seven 50-100 dollars for labor, out of any moneys in the treasury belonging to the street fund.

                    " 'Elbert D. Weed, Mayor.

" 'Stephen Carpenter, City Clerk.

" 'No. 19,608.

" 'Presented and registered, and not paid, for want of funds,

" 'Oct. 29, 1894.

                    " 'C. B. GARRETT, R., City Treasurer.

" 'H. MITCHELL.'

—''Then and there falsely, fraudulently, and feloniously altered and raised the same by adding to the word 'seven,' in the body of said warrant, the letters 'ty,' and by falsely, fraudulently, and feloniously adding to the figure '7,' where the said figure appears in the body of said warrant, the figure

'0,' so that said warrant became, and then and there was, of the tenor following, to wit:

"'$70.50.                    Helena, Montana, Oct. 1, 1894.

"'The treasurer of the city of Helena, Montana, will pay to the order of H. Mitchell seventy 50-100 dollars for labor, out of any moneys in the treasury belonging to the street fund.                    Elbert D. Weed, Mayor.

"'Stephen Carpenter, City Clerk.

"'No. 19,608.

"'Presented and registered, and not paid, for want of funds.

"'Oct. 29, 1894.

"'C. B. GARRETT, R., City Treasurer.

"'H. MITCHELL.'

—"With intent to injure and defraud the said city of Helena, which said city of Helena," etc.

The defendant filed a motion to quash the information, because "he was not legally committed, and is not legally held, in this: That the said informations do not charge the defendant with the offense for which he was held to answer, or any other offense disclosed before the committing magistrate, said defendant being charged by complaint before the committing magistrate for forging an order for the payment of moneys of the city of Helena to one J. Patrick, and the offense disclosed at such hearing relates to such offense alone, and no charge was made of facts disclosed at such hearing in regard to the offense charged in said informations, or either of them, nor was he held therefor." The court overruled the motion. The defendant then filed a demurrer, the principal grounds of which were that the instrument charged to have been forged is a city warrant, which is not made the subject of forgery, under the statutes; that the instrument charged to be forged is wholly void, in that the indebtedness of the city of Helena, as limited by the constitution and laws of the state, was exceeded by many thousand dollars at the time that the forgery is charged to have been committed. The demurrer was overruled. A trial was had. The state introduced its proof.

Thereupon the defendant offered to prove "that the outstanding and unpaid bonds of the city of Helena, October 1, 1894, amounted to the sum of $391,000; that the outstanding and unpaid warrants and floating indebtedness of said city of Helena, issued, registered, and unpaid, before the warrant charged to be forged by the defendant in said information, amounted to the sum of $311,135, making a total of $702,135 indebtedness of the said city of Helena; that the last assessment and valuation of property of said city of Helena in the year 1894, duly made by the regularly elected assessor of said city, amounted to the sum of $13,500,000; that three per cent. of said valuation and assessment, as limited by the constitution, is $405,000; that the warrant charged to be forged in the information is void by the constitution, and utterly worthless for all purposes, and hence not a subject of forgery." This evidence was objected to, on the ground that it did not constitute a defense, and was immaterial and irrelevant. The court sustained the objection of the state.

After conviction, a motion in arrest of judgment was made, because the court had no jurisdiction to try the case, because the information was not based upon the offense charged in the complaint before the committing magistrate, nor the evidence disclosed before said magistrate, nor on the commitment; also because the facts stated in the information did not constitute a public offense. The motion was overruled.

*C. W. Wiley*, for Appellant.

*Henri J. Haskell*, Attorney General, for the State, Respondent.

HUNT, J.—It appears by the record that the information upon which the defendant was convicted of the crime of forgery was filed by leave of court. Nevertheless, it is argued, a prosecution by information, where there has been no preliminary examination, is illegal, and a violation of constitutional rights. Const., art. III, § 8, expressly provides that "all criminal actions in the district court, except those on appeal, shall be

prosecuted by information, after examination and commitment by a magistrate, or after leave granted by the court, or shall be prosecuted by indictment, without such examination or commitment, or without leave of court.'' It is evident that one of the objects of the constitution was to do away, to a great extent, with the machinery and expense of a grand jury, by substituting therefor prosecution by information. It is not necessary, in order to vest power in the county attorney, to file an information that there shall be a preliminary examination and commitment. He may act, after leave has been granted by the court, in a case like the one at bar, where there may not have been any charge or information before a committing magistrate.

One of two methods of procedure is indispensible where an information is filed,—either there must have been an examination and commitment, or there must have been leave of court procured. But both steps are not required. A plain interpretation of the words of the constitution by which every clause of the section quoted shall be effective leads to this conclusion. We think, too, that the rights of a defendant are guarded, no matter what procedure is followed.

1. Where an investigation into his guilt or innocence is had before a committing magistrate, and a commitment is the result, such a judicial inquiry is sufficient to justify the county attorney in proceeding in the district court without first obtaining leave of that court to file an information, formally charging the defendant with the offense for which he was examined, or any other offense, by the facts disclosed upon such preliminary hearing. The protection rests in the guaranty of a right to a judicial review of the matter by an impartial magistrate.

2. Where no examination has been had before a magistrate, and no commitment has been made, in such case, to protect the rights of the defendant, and to guard him against oppression or malice, and to prevent abuse of any general power vested in the county attorney, leave of the district court is necessary to be obtained. Thus, again, there is the guaranty that a judicial order will be required before there can even be a

charge preferred.    It is suggested that obtaining of a leave of
the court is a mere perfunctory matter, and is granted of
course.    This argument, if true, reflects·credit upon the sev-
eral county attorneys of the state for having administered their
offices with that high sense of impartial responsibility and°
power imposed upon them by the constitution, but it loses its
entire force if an instance should arise where a prosecuting
officer oppressively, maliciously or otherwise illegally should
attempt to unjustly harass any citizen by filing an information
charging him with crime.    At once, upon proper showing, or
doubtless by order of the court of its own motion, where the
court should believe that a wrong was about to be done, the
leave of the court would be suspended or denied, until an in-
quiry could be had into the reasons for the official acts of the
county attorney in filing the information, and until the court
was satisfied by the showing made that the case was one where
an information should be filed.    Thus, again, the guaranty
that judicial leave will be had before instituting a prosecution
affords safety to the innocent, quite ample to prevent any abuse
of the power of the state, in the hands of a prosecuting attor-
ney.    See *State* v. *Boswell*, 104 Ind. 541, 4 N. E. 675.

3.    Where a grand jury investigates crime, they may act
independently of any preliminary charge, or without the per-
mission of the court.    The formality of the organization of a
grand jury, its well-tested utility as an institution of the law,
its intelligence, its numbers, and its presumed impartiality,
themselves are deemed sufficient assurances that the jurors will
abide by their oaths under the law to present no indictment
"through hatred, malice or ill will, nor leave any unpresented
through fear, favor or affection, or for any reward, or the
promise or hope thereof."    For these reasons, doubtless, the
constitution has vested this power of indictment in the grand
jury, and saw fit not to restrict their jurisdiction by any limi-
tations other than those usually governing the conduct of such
a body.

We are cited by appellant to several cases in California,
Kansas and Michigan, but none of those decisions are applica-

ble, because the provisions of the constitutions and statutes of those states either limit the right to file an information to cases where there has been an examination and commitment by a magistrate, or expressly prohibit that method of prosecution, unless there has been such examination and commitment.

In California, by section 8, article I, of the constitution, offenses shall be prosecuted by information, after examination and commitment; and by section 995 of the Code of Criminal Procedure of California, an information shall be set aside if, before the filing thereof, the defendant has not been legally committed by a magistrate. (*People* v. *Christian*, 101 Cal. 471, 35 Pac. 1043.) Procedure like that of Montana, after obtaining leave of court, is not known to that state; and it is well to note that the annotations to sections 1730 and 1910 of the Penal Code now in force are not made with relation to the proper effect to be given to the authorization in the constitution of Montana permitting informations to be filed where leave of court has been obtained, without regard to whether there has been any preliminary examination before a magistrate.

In Kansas, it is also expressly provided by statute (paragraph 5133, Gen. St. 1889) that " no information shall be filed against any person for any felony until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such person shall waive his right to such examination," etc.

In Michigan, it is provided by section 9555, page 2299, How. Ann. St., that no information shall be filed until there has been a preliminary examination, unless such person shall waive his right to such examination. (*People* v. *Evans*, 72 Mich. 367, 40 N. W. 473.)

Appellant raises the additional point that even if the constitution of the state does authorize prosecution by information without preliminary examination having been had, where leave of court is first obtained, such a proceeding is a deprivation of the liberty of the citizen, without due process of law, and is an infringement abridging the privileges and immunities of

citizens of the United States, as guaranteed by the fourteenth article of the amendment of the constitution of the United States.

The supreme court of the United States, in *Hurtado* v. *People*, 110 U. S. 534, 4 Sup. Ct. 111, 292, affirmed the doctrine laid down in the earlier case of *Davidson* v. *New Orleans*, 96 U. S. 97, that " it is not possible to hold that a party has, without due process of law, been deprived of his property when, as regards the issues affecting it, he has, by the laws of the state, a fair trial in a court of justice, according to the modes of proceeding applicable to such a case." "In the fourteenth amendment," speak the court, " by parity of reason due process of law refers to that law of the land in each state which derives its authority from the inherent and reserved powers of the state, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure." " It follows that any legal proceeding, enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law." And, again, the same court, in *Hallinger* v. *Davis*, 146 U. S. 314, 13 Sup. Ct. 105, decided that a statute of New Jersey conferring upon one charged with crime the right to waive a trial by jury, and to elect to be tried by the court, and conferring power upon the court to try the accused in such case, is not in conflict with the constitution of the United States. Justice Shiras approvingly quotes from a former decision of Justice Bradley in *Missouri* v. *Lewis*, 101 U. S. 22, as follows : " There is nothing in the constitution to prevent any state from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the state of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties,

and the common law and its methods of procedure for the rest of the state, there is nothing in the constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the fourteenth amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the state should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to; for, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or classes in the same place and under like circumstances. The fourteenth amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two states, separated only by an imaginary line. *On one side of this line there may be a right of trial by jury, and on the other side no such right. Each state prescribes its own modes of judicial proceedings.* * * * Where a part of the state is thickly settled, and another part has but few inhabitants, it may be desirable to have different systems of judicature for the two portions,—trial by jury in one, for example, and not in the other. * * * It would be an unfortunate restriction of the powers of a state government if it could not, in its discretion, provide for these exigencies.''

Guided by the discussions and logical reasoning of such constitutional expounders as Justices Miller and Bradley, we are of the opinion that, by the clause under discussion, the framers of the constitution of the state formulated a somewhat new and presumably improved procedure in criminal cases, limited, but general in its application; always circumscribed in its operation by depending upon the sound approval of a court before its power may be legally invoked to charge a citizen with crime who has never had the opportunity of a hearing before a committing magistrate, or whose conduct has not been investigated by a grand jury. We are therefore unable to see how

the proceeding authorized by the constitution in any way interfered with the administration of the regular course of law. Leave of court being necessary, the individual is not subjected to any arbitrary exercise of the powers of the state not restrained "by the established principles of private right and distributive justice." (*Leeper v. Texas,* 139 U. S. 462, 11 Sup. Ct. 577; *Caldwell* v. *Texas,* 137 U. S. 692.)

In *State* v. *Sureties of Krohne* (Wyo.) 34 Pac. 3, Groesbeck, C. J., in a learned opinion, analyzes a former statute of that state, which authorized a prosecuting officer, without any authority of the court first being obtained, to file an information, and comes to the conclusion that, although the provision was an extreme one, yet it did not conflict with the constitutional safeguards thrown about every citizen of the state. It is unnecessary for this court to pass upon such a statute, or an equally liberal statute to be found in the state of Washington, and criticised by Judge Handford in *Re Humason,* 46 Fed. 388, or the laws of other states which permit informations to be filed without the leave of court first obtained. See, on this point, *Swart* v. *Kimball,* 43 Mich. 443, 5 N. W. 635, and cases cited in the opinion of Groesbeck, C. J., *supra.* It would seem, too, that there is much more room for argument against the validity of a statute where the county attorney may proceed without leave of court than where such leave is a prerequisite to filing an information. But if, as is held in several of the decisions cited, there is no infringement upon rights where no leave is required, and no examination need be had, *a fortiori* can it be said that none are denied where a court must exercise a control over the action of the county attorney.

The point that a city warrant is not the subject of forgery is not well taken. The statute makes it forgery to "falsely make, alter, forge, or counterfeit any * * * writing obligatory, draft, * * * contract," etc. (Comp. St. div. 4, c. 7. § 96.) A city warrant or order, regular on its face, and apparently drawn according to law on the city treasurer, signed by the mayor of the city, and countersigned by

the city clerk, for the payment of moneys out of a specific fund, is a draft. (Daniel, Neg. Inst. §§ 427, 428.) It is therefore made the subject of forgery by the statute quoted.

The warrant is not illegal upon its face. On the contrary, it purported to be good and valid for the purposes for which it was made. On its face it would have the effect to defraud those who might act upon it as genuine. Therefore, if it was altered with intent to defraud on the part of the defendant, the crime of forgery was complete. (*People* v. *Bibby*, 91 Cal. 470; *State* v. *Vineyard, ante* page 138; 2 Bish. Cr. Law, §§ 523, 533.)

Appellant finally argues that he ought to have been permitted to prove that the warrant was void, because the city of Helena had exceeded the constitutional limit of its indebtedness at the time the draft in question was issued. This argument is well answered by the observations of the supreme court of California in *People* v. *Munroe*, 100 Cal. 664. In that case the defendant was convicted of forgery. The writing was an assignment of the unearned salary of a public school teacher for the next ensuing month, together with an order on the city auditor of Los Angeles for the warrant representing such salary. It was claimed that the purported author of the writing, being a public school teacher, was a public officer, and that the sale or assignment of an unearned salary by a public officer was void, being against public policy, and, the writing being void, it could not be the basis of a charge of forgery. The court held that the writing was the subject of forgery, and, in discussing obligations *ultra vires*, said: "Obligations *ultra vires* stand upon the same level with contracts against public policy as to the offense of forgery. If one is not the subject of forgery, neither is the other. In England, corporations are created by special acts of parliament. Within those acts are found the measures of their powers. In this country, the general statutes, in connection with the articles of incorporation, which are public records, form the limitation of their powers. Thus, the world deals with corporations with a knowledge of the extent of their powers, and ignorance of

the law forms no defense to the plea of *ultra vires*. If this appellant's position be sound, all contracts of corporations which are *ultra vires* are not the subject of forgery. Neither would bonds of municipal corporations which are *ultra vires* form the foundation for a prosecution for forgery. The determination of the powers of corporations, both private and municipal, is a question often involving the most complex principles of legal jurisprudence; and, if *ultra vires* contracts may not be forged, a rich field for the successful practice of fraud is presented to the forger. In *State* v. *Eades*, 68 Mo. 150, 30 Am. Rep. 780, it is said that the fraudulent making of a false municipal certificate of indebtedness is forgery, though the municipality had no power to issue such certificate; and this principle is in line with sound reason, and fully commends itself to our views. It is held that contracts made under an unconstitutional law are void. Every man is presumed to know the law, and appellant's contention would free the criminal forging such a contract. (*Vilhac* v. *Railroad Co.*, 53 Cal. 208.) In other words, it would be a good defense to a prosecution for forgery that the law under which a genuine contract similar to the forged one might be made is unconstitutional. Such a plea is too remote from the crime of which the accused stands charged, and his liberty must be regained on more substantial grounds. As to what contracts are against public policy, or *ultra vires*, or void as creations under unconstitutional statutes, we think matters entirely foreign to a prosecution for forgery. In the examination of such grave and abstruse questions, the criminal element of the case would soon be lost to view."

We find no error in the case. The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.