STATE EX REL. CORRY, RELATOR, v. COONEY ET AL., RE-
SPONDENTS; SHEEHAN, INTERVENER.

(No. 5,507.)

(Submitted April 5, 1924.   Decided April 26, 1924.)

[225 Pac. 1007]

*Constitution—Amendment—Consolidation of County and City Governments—Validity of Amendment and Act.*

Constitution—Attack on Validity of Amendment After Adoption by People—Presumption.
1.   Where the validity of a constitutional amendment is attacked after its adoption by the people every presumption in its favor will be indulged, the question being, not whether it is possible to condemn but whether it is possible to uphold it, and condemnation will follow only if its nullity is manifest beyond a reasonable doubt.

Same—Consolidation of County and City Governments—Amendment not a "Revision."
2. *Held*, that section 7, Article XVI, of the state Constitution, authorizing the consolidation of county and city governments, is not an attempted revision under section 8 of Article XIX, but is an amendment under section 9 thereof.

Same—"Revision"—"Amendment"—Definitions.
3. *Revision of the Constitution* authorized by section 8, Article XIX, implies the probability of extensive and comprehensive action by a convention, while an "amendment" under section 9 does not only comprehend any change in the Constitution which adds something to or takes away from it, but is susceptible to a construction which will make it cover several propositions, all tending to effect or carry out one general object or purpose, and all connected with one subject.

Same — Consolidation of County and City Government Amendment—Validity—Unity of Subject.
4. Where an amendment to the Constitution has but one object in view and relates to but a single plan or purpose, the fact that it may impinge upon or affect various of its provisions does not alone render it objectionable to section 9 of Article XIX, providing that where more than one amendment is submitted to the people at the same election they shall be separately voted upon.

Same—Amendment Held not to Violate Provision Against Enactment of Special Laws Regulating County Affairs.
5. Amendment to Article XVI of the Constitution by adding thereto section 7, providing for the consolidation of county and city governments, *held* not open to the objection that it violates section 26, · Article V, of that instrument prohibiting the legislature from passing a local or special Act regulating county affairs, creating offices or prescribing the powers and duties of officers in counties and cities, or of section 31 thereof prohibiting the extension of terms of public officers or the increasing or diminishing of their salaries.

Same—Permissive Feature of Amendment not a Valid Objection.
6. The fact that counties, cities and towns may or may not avail themselves of the provisions of section 7, Article XVI, above, its provisions being permissive, is not a proper objection to its validity.

Same—Power of People in Legislative Capacity.
7. In their legislative capacity the people may do anything not prohibited by the state or federal Constitution.

Same—Amendment not Objectionable as Changing Senatorial and Judicial Districts.
8. The amendment to the Constitution wrought by the addition of section 7, Article XVI, is not in contravention of sections 5 and 6, Article VI thereof, respecting senatorial districts and representatives in the legislative assembly to which the county sought to be consolidated with a city is entitled, nor of section 13 of Article VIII, respecting judicial districts.

Same—Act Authorizing Consolidation not Invalid as Depriving People of County and City of Power of Local Self-government.
9. Chapter 160, Laws of 1923, authorizing the consolidation of Silver Bow county and the city of Butte into one municipal corpora-

9. Constitutionality of commission form of government, see notes in Ann. Cas. 1912C, 999; Ann. Cas. 1915A, 1217; Ann. Cas. 1917C, 1104, 1125; 35 L. R. A. (n. s.) 802; 41 L. R. A. (n. s.) 111; 51 L. R. A. (n. s.) 632; L. R. A. 1917A, 1260.

tion under section 7, Article XVI, of the Constitution, *held* not objectionable as depriving the people of that county and city of the power of local self-government, nor as denying to a creditor of either the equal protection of the laws guaranteed by the fourteenth amendment to the federal Constitution.

Same—Failure of Act to Provide for Discontinuance of Consolidated Government not Valid Objection.
10.   That the Act authorizing the consolidation of a county and city into one municipal government does not in express terms provide how the government thus authorized, if adopted, may be discontinued is not a valid objection to its validity.

Same—Effect of Act on Property of County and City.
11.   The objection that under Chapter 160, Laws of 1923, *inter alia* providing that the question of the adoption of its provisions for the consolidation of the county of Silver Bow and all cities and towns therein shall be submitted to the electors of the county, residents of the city may vote away the property of the county, and residents outside of it may do the same with property of the city, *held* to be without merit.

Same—Act Held not to Impair Obligations of Creditors' Contracts.
12.   *Held,* that under section 58 of Chapter 160, Laws of 1923, creditors of the county, city and town consolidated under one government who became so before consolidation are fully protected, and that therefore the claim that the effect of the Act is to deprive them of their security for the payment of their claims and thus to impair the obligations of their contracts has no merit.

Same—Legislature Held not Precluded by Prior General Law from Passing Special Law for Consolidation of County and City Governments.
13.   Section 7, Article XVI, of the Constitution provides that the legislature may "by general *or* special" law provide for the consolidation of county and city governments. After the passage of a general law on the subject (Chap. 121, Laws of 1923) the legislature passed a special Act authorizing the consolidation of the county of Silver Bow and the cities and towns therein located. *Held,* that the contention that the word *or* limits the power of the legislature to the adoption of either a general or a special law, and that having adopted the general Act it was precluded from passing the special one cannot be sustained, but that in order to carry out the legislative intent the word "or" must be read "and," it being apparent that the legislature in framing section 7 for submission to the electors did not intend to impose a limitation upon its power against adopting both a general and a special law to carry out its provisions.

Same—Rules of Construction Applicable.
14.   In construing the Constitution the same rules apply as in the construction of statutes, and such a construction must, if possible, be adopted as will give effect to all of its provisions.

Consolidation of County and City Governments—Petitions for Submission to Electors—Copy of Act not Required to be Attached.
15.   *Held,* that the petitions filed with the county clerk of Silver Bow county asking for the submission to the electors of the question of the adoption of the plan for the consolidation of the county and the city of Butte under one government were not required to have a copy of Chapter 160, Laws of 1923, authorizing such consolidation upon a favorable vote, attached to them, it being presumed

[70 Mont. 355.]

that the electors had knowledge of the Act, and the provision of section 21, relating to the referendum, having reference to ordinances passed by the consolidated government and not to the Act itself.

Original application for writ of injunction by the State, on the relation of Arthur V. Corry, against Byron E. Cooney and others, as Board of County Commissioners of Silver Bow County, and another, in which M. J. Sheehan intervenes. Proceeding dismissed.

*Mr. J. A. Poore,* for Relator.

*Mr. Timothy Nolan, Mr. H. J. Jones, Mr. Roy S. Alley* and *Mr. F. K. Sullivan,* for Intervener, submitted a brief; *Mr. Nolan* argued the cause orally.

*Mr. Jas. H. Baldwin, Mr. J. H. Griffin, Mr. M. Kerr Beadle, Mr. N. A. Rotering, Mr. Clarence Hanley, Mr. C. E. O'Neill, Mr. J. T. Fitzgerald, Mr. A. R. Bertoglio, Mr. Earl Blodgett, Mr. D. T. Malloy, Mr. F. E. McCracken, Mr. J. T. Andrew, Mr. J. E. Healy, Mr. George Toole, Mr. Jeremiah J. Sullivan, Mr. M. F. Canning, Mr. Alex Levinski, Mr. Harry J. Freebourn, Mr. Timothy E. Downey, Mr. M. J. English* and *Mr. Wm. Maloney,* of Counsel.

*Mr. Charles R. Leonard,* Messrs. *Templeman & Sanner, Mr. Thomas J. Walker, Mr. Miles J. Cavanaugh, Mr. Frank W. Haskins, Mr. Carl Christian, Mr. E. B. Howell, Miss Jessie Roscow,* Messrs. *Maury & Maury,* Messrs. *Frank & Gaines, Mr. L. P. Sanders,* and *Mr. F. C. Fluent, Amici Curiae,* submitted a brief; *Mr. Sydney Sanner* argued the cause orally.

*Mr. George Bourquin,* for Respondent, submitted a brief.

OPINION: PER CURIAM.

The Seventeenth Legislative Assembly proposed an amendment to Article XVI of the Constitution of Montana by adding thereto the following:

"Section 7. The legislative assembly may, by general or special law, provide any plan, kind, manner or form of municipal government for counties, or counties and cities and towns, or cities and towns, and whenever deemed necessary or advisable, may abolish city or town government and unite, consolidate or merge cities and towns and county under one municipal government, and any limitations in this Constitution notwithstanding, may designate the name, fix and prescribe the number, designation, terms, qualifications, method of appointment, election or removal of the officers thereof, define their duties and fix penalties for the violation thereof, and fix and define boundaries of the territory so governed, and may provide for the discontinuance of such form of government when deemed advisable; provided, however, that no form of government permitted in this section shall be adopted or discontinued until after it is submitted to the qualified electors in the territory affected and by them approved." (Chap. 113, Session Laws 1921, p. 119.)

At the general election held in November, 1922, the people voted in favor of the proposed amendment and by proclamation it was declared to be a part of the Constitution.

Acting in pursuance of the amendment, the Eighteenth Legislative Assembly enacted a law designed to authorize the consolidation of the corporate existence and government of the county of Silver Bow and all cities and towns within that county into a municipality to be known as "City and County of Butte." This Act (Chap. 160 of the Session Laws of 1923, p. 480) was approved March 14, 1923.

On January 22, 1924, a petition signed by at least 2,500 electors of Silver Bow county was filed with the county clerk requesting that the adoption of the Act be submitted to the electors of Silver Bow county. The county clerk having found that the petition was signed by the required number of electors, on February 4 certified the fact to the board of county commissioners which on February 11 fixed May 12, 1924, as the

day for holding the election. Thereupon Arthur V. Corry as relator brought this action against the board and the county clerk, seeking an injunction to prohibit those officers from proceeding with the election. We issued an order to show cause, returnable April 5, 1924. In the meantime M. J. Sheehan, a creditor of the city of Butte and also of the county of Silver Bow, by permission of the court filed a complaint in intervention, likewise asking for an injunction to prevent the election. The respondents, through the county attorney of Silver Bow county, appeared by motion to quash the citation and also filed a general demurrer to the petition for an injunction, as well as to the complaint in intervention. A number of attorneys and counselors at law residing in the city of Butte were permitted to appear as *amici curiae,* and the cause was submitted upon the merits upon the date fixed in the citation.

Counsel for relator and intervener have attacked the validity of the constitutional amendment itself and of the Act upon numerous grounds. A minor attack is based upon an alleged insufficiency of the petition submitting the Act to the people.

I. As preliminary we heed the voice of sections 1 and 2 of Article III, being the first two sections of the Declaration of Rights: "All political power is vested in and derived from the people; all government of right originates with the people; is founded upon their will only, and is instituted solely for the good of the whole." "The people of the state have the sole and exclusive right of governing themselves, as a free, sovereign, and independent state, and to alter and abolish their Constitution and form of government, whenever they may deem it necessary to their safety and happiness, provided such change be not repugnant to the Constitution of the United States."

That the forms prescribed for the submission of the amend-
[1] ment to the people have been followed is not questioned, and here as always we enter upon a consideration of the validity of a constitutional amendment after its adoption by

the people with every presumption in its favor: The question is not whether it is possible to condemn the amendment but whether it is possible to uphold it, and we shall not condemn it unless in our judgment its nullity is manifest beyond a reasonable doubt. (*State ex rel. Hay* v. *Alderson,* 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210; *Martien* v. *Porter,* 68 Mont. 450, 219 Pac. 817.)

(a) The first objection, vigorously asserted, is that section 7 **[2, 3]** of Article XVI is not an amendment to the Constitution, but an attempted revision. Revision, it is said, can be done only by a constitutional convention under the provisions of section 8 of Article XIX of the Constitution, which provides: ''The legislative assembly may at any time, by a vote of two-thirds of the members elected to each house, submit to the electors of the state the question whether there shall be a convention to revise, alter, or amend this Constitution,'' *etc.,* while section 9, upon which the amendment is based, relates to amendments only.

The objection is not tenable. The legislature in proposing section 7 to Article XVI did not intend to ''revise'' the Constitution, either in whole or in part. Revision as contemplated in section 8 implies a re-examination and restatement of the Constitution, or some part of it, in a corrected or improved form. The revision may be with or without material change; but clearly, as the word is used in the section, it implies the probability of extensive and comprehensive action by the convention. (See Sutherland on Statutory Construction (Lewis' ed.), sec. 269; *Pratt Institute* v. *City of New York,* 183 N. Y. 151, 5 Ann. Cas. 198, 75 N. E. 1119.)

In legislative parlance ''amendment'' is an alteration or change of something proposed in a bill or established as law. (Bouvier's Law Dictionary.) A statute which adds a provision to a section or an existing statute is an amendment. (*Henderson* v. *City of Galveston,* 102 Tex. 163, 114 S. W. 108.) Generally speaking, an amendment repeals or changes some

provision of a pre-existing law or adds something thereto. (*Board of Public Instructions* v. *Board of Commrs.*, 58 Fla. 391, 50 South. 574.)

The word "amendment" is clearly susceptible to a construction which would make it cover several propositions, all tending to effect and carry out one general object or purpose, and all connected with one subject, as well as to the construction that every proposition which effects a change in the Constitution or adds to or takes from it, is an amendment. (Words and Phrases, "Amendment"; *State ex rel. Hudd* v. *Timme*, 54 Wis. 318, 11 N. W. 785; *People ex rel. Elder* v. *Sours*, 31 Colo. 369, 102 Am. St. Rep. 34, 74 Pac. 167.)

That the Act was simply intended as amendatory of the Constitution is indicated by its purpose.

When the convention which framed our Constitution was in session a committee, variously known as that on "County, City and Town Government" and as "City, County and Town Organizations," proposed Article XVI under the head of "Municipal Corporations and Officers." This is the only Article which has to do with municipal corporations and officers as such. It embraces the general subject of counties, county officers, and section 6 thereof says: "The legislative assembly may provide for the election or appointment of such other county, township, precinct and municipal officers as public convenience may require and their terms of office shall be as prescribed by law, not in any case to exceed two years, except as in this Constitution otherwise provided."

The term "municipal officers" means city or town officers. (*State ex rel. Quintin* v. *Edwards*, 38 Mont. 250, 99 Pac. 940.) That the framers of the section used the phrase advisedly to distinguish city and town officers from county and township officers is beyond question. They were endeavoring to comprehend in this section officers of counties, townships, precincts, cities and towns. That they "did not intend municipal corporations to include counties is clear, for the two terms are used, as in this

section, to distinguish different organizations." (*Hersey* v. *Neilson*, 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30.) It is true that for convenience the officers of clerk of the district court, county attorney and justice of the peace are enumerated among judicial offices (Art. VIII, secs. 18, 19, 20; *State ex rel. Rowe* v. *Kehoe*, 49 Mont. 582, 144 Pac. 162); but vacancies in these, as in case of all other county, township and precinct offices (except county commissioners), shall be filled by the board of county commissioners (Art. XVI, sec. 5). Counties, cities and towns are referred to in other sections of the Constitution, but only when inhibitions are prescribed (as illustrative, Art. V, sec. 26; Art. XII, sec. 6; Art. XIII, secs. 1, 3, 5, 6), or when benefits are conferred or provided for (as illustrative, Art. V, sec. 26; Art. XII, secs. 2, 5).

It cannot be doubted that the purpose of the amendment was in the first instance to furnish to the people an avenue of escape from the evils which have grown out of what is generally termed the aldermanic system of municipal government, as well as from the disadvantages arising from duplication in government in counties where large cities exist. The evils coeval with aldermanic government in cities are known to everybody. Indeed, one conspicuous failure of the American people in government—a subject of adverse comment by statesmen everywhere—has been that which has grown out of the aldermanic system.

The framers drew the amendment with a broad view of the aspirations of a progressive society looking forward to a betterment of its local governmental conditions. It was perceived that more modern plans or forms of government might be desired by counties, cities and towns, either separately or jointly; that consolidation of county and city governments, or mergers of city or town governments, might be favored. By the proposed amendment these objects were to be made possible, dependent always upon the popular will determined at the polls. Whether the objects sought to be attained may be

achieved by means of the plan proposed is a question upon which we shall not express or even intimate an opinion. If we were qualified to do so it would not be within our province.

It is manifest that when the legislature proposed and the people adopted section 7 it was the intention to repose in the people residing in the respective municipalities, or *quasi* municipalities, named, the privilege of changing radically, if they so desire, their former system of local government.

(b) But it is insisted that section 7 undertook to and did [4] present to the electors of the state more than one amendment, violating section 9 of Article XIX in two particulars: (1) Section 9 provides that "should more amendments than one be submitted at the same election, they shall be so prepared and distinguished by numbers or otherwise that each can be voted upon separately," which was not done; (2) more than three amendments were submitted which section 9 prohibits. As illustrative, it is said section 7 attempts to authorize the legislative assembly: To pass local or special laws in violation of the provisions of section 26 of Article V; to authorize the repeal of section 19 of Article VIII as to such portions of the state of Montana as may adopt the same; and likewise as to sections 20 and 26 of Article VIII, and section 5 of Article XVI. Others are suggested which will be mentioned in subsequent portions of this opinion.

The objection that the amendment, although in the form of but one, in reality consists of more than three, is not tenable. Constitutional provisions necessarily are couched in broad language for they are designed to have a comprehensive scope and operation. When we examine the section under consideration critically we see that it has but one purpose, one design: To permit the legislature by general or special law to provide a legal method, within the limitations mentioned in the amendment, whereby counties, or counties and cities and towns, or cities and towns, may adopt what may be termed a municipal form of government. It easily stands the test stated by this

court in *State ex rel. Hay* v. *Alderson,* 49 Mont. 387, Ann.
Cas. 1916B, 39, 142 Pac. 210: "The fact that an amendment
can be separated into two or more propositions, concerning the
value of which diversity of opinion may exist is not alone
decisive. If, in the light of common sense, the propositions
have to do with different subjects, if they are so essentially
unrelated that their association is artificial, they are not one;
but if they may be logically viewed as parts or aspects of a
single plan, then the constitutional requirement is met in their
submission as one amendment." The fact that an amendment
impinges upon or affects various provisions of the Constitution
is not in itself persuasive that essential unity was violated in
its submission. The real question is whether the operation of
the amendment relates to a single plan or purpose. Apt lan-
guage appears in *State* v. *Timme,* 54 Wis. 318, 11 N. W. 785:
"This provision can have but two constructions: First, it may
be construed  *  *  *  that every proposition in the shape of
an amendment to the Constitution, which standing alone
changes or abolishes any of its present provisions, or adds any
new provision thereto, shall be so drawn that it can be sub-
mitted separately, and must be so submitted. Such a construc-
tion would, we think, be so narrow as to render it practically
impossible to amend the Constitution; or, if not practically
impossible, it would compel the submission of an amendment
which, although having but one object in view, might consist
of considerable detail, and each separate provision, though all
promotive of the same object and necessary to the perfection
and practical usefulness thereof if adopted as a whole, in such
form that a defeat of one of its important matters of detail
might destroy the usefulness of all the other provisions when
adopted.  *  *  *  We think amendments to the Constitution,
which the section above quoted requires shall be submitted
separately, must be construed to mean amendments which have
different objects and purposes in view. In order to constitute
more than one amendment, the propositions submitted must

relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other." (And see *People ex rel. Elder* v. *Sours, supra; People* v. *Prevost,* 55 Colo. 199, 134 Pac. 129; *Gottstein* v. *Lister,* 88 Wash. 462, Ann. Cas. 1917D, 1008, 153 Pac. 595; 12 C. J. 691, and notes.)

By the enactment of the amendment it was a necessary corollary that parts of the original Constitution (adopted in contemplation of forms of county and municipal government then familiar to the original framers) would be modified, impinged upon or superseded. This is the inevitable result of provisions amendatory of a pre-existing law. "If later amendments destroy, impinge upon, modify, or wipe out old provisions, the newer provisions must stand, because they are the last utterance of the people, who reserve to themselves the right to change the organic law, in the way provided by the organic law itself." (*Falstaff Corporation* v. *Allen* (D. C.), 278 Fed. 643.)

If the amendment seeks to do anything at all, it seeks to repose in the people the right to change their local form of government from the old system to a newer one. And incidentally it looks ahead to a time beyond the present era; under this amendment it was intended that the people should be enabled to change their plan, kind, manner or form of municipal or *quasi*-municipal government from time to time as the development of their economic or social status might require. (*State ex rel. Fenner* v. *Keating,* 53 Mont. 371, 163 Pac. 1156.) To achieve this end, manifestly it was imperative that provisions in the Constitution prior to the amendment should yield to the new expression of the people's will. Hence the phrase in the amendment "any limitation in this Constitution notwithstanding."

If the new plan, kind, manner or form of municipal government which the amendment seeks to make possible—a plan, kind, manner or form to be prescribed by the legislature and adopted by a vote of the people—is to be effective, it must be

in harmony with the new provision, and not be fettered with old provisions which would destroy it.

II.   Section 7 of Article XVI is now a part of the Constitution of the state, and is in force equally with any other part of the Constitution. "It is not only a part of the Constitution, but it is there to stay until the authority which voted it in shall vote it out." (*People* v. *Cassiday,* 50 Colo. 503, 117 Pac. 357.)

Upon what has just been said we might rest from further consideration of this branch of the case. But we shall note briefly a few of the objections urged by counsel for petitioner and for intervener.

(a) Numerous objections are based upon the theory that [5] the amendment violates section 26 of Article V, which prohibits the legislature from passing a local or special Act in particulars mentioned in that section; for instance, regulating county affairs, creating offices or prescribing the powers and duties of officers in counties and cities. And likewise our attention is called to section 31 of Article V which provides: "Except as otherwise provided in this Constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument after his election or appointment.   *   *   *   *"

These objections might be answered conclusively by saying that the Constitution now provides that the legislature may designate the name of the municipality and "fix and prescribe the number, designation, terms, qualifications, method of appointment, election or removal of the officers thereof," and define their duties, subject to the approval of the electors in the territory affected.

As to interference with the terms of the officers of the county, it is of course clear that even a constitutional office may be abolished by a new Constitution or by an amendment to an existing one. (*Eckerson* v. *Des Moines,* 137 Iowa, 452, 115 N. W. 177; *Reals* v. *Smith,* 8 Wyo. 159, 56 Pac. 690; *State*

v. *Evans,* 166 Mo. 347, 66 S. W. 355; *Mial* v. *Ellington,* 134
N. C. 131, 65 L. R. A. 697, 46 S. E. 961; *Mayor* v. *State,* 102
Miss. 663, Ann. Cas. 1915A, 1213, 59 South. 873.)

(b) The argument that the amendment is invalid because it
is operative only in the future, only on a portion of the state,
[6] and only at the will of a part of the people is fallacious.
The amendment is now in full force.  To be sure, its action
is permissive; counties, cities and towns may or may not avail
themselves of its provisions at their pleasure.  But in this
respect the amendment is like the local option laws considered
by this court in the case of *In re O'Brien,* 29 Mont. 530, 1
Ann. Cas. 373, 75 Pac. 196.  (And see *Chicago Terminal
Transfer Ry. Co.* v. *Greer,* 223 Ill. 104, 114 Am. St. Rep. 313,
and note, 79 N. E. 46; *People* v. *Cassiday, supra; State* v.
*Storey,* 51 Wash. 630, 99 Pac. 878; *City Council* v. *Commrs.,*
33 Colo. 1, 77 Pac. 861; *Kansas City* v. *Marsh Oil Co.,* 140 Mo.
458, 41 S. W. 943.)

III.  (a) Many other objections are somewhat blended to-
gether.  They are based upon the operation, or alleged lack of
operation, of the amendment, as well as upon the alleged in-
validity of the Act.  In considering these it is well to bear in
[7] mind the fundamental proposition that in respect of legis-
lation the people may do anything which is not prohibited by
the state Constitution or the federal compact.  (*The Veto Case,*
69 Mont. 325, 222 Pac. 428; *State ex rel. Evans* v. *Stewart,*
53 Mont. 18, 161 Pac. 309; *In re Pomeroy,* 51 Mont. 119, 151
Pac. 333.)  "All political power is vested in and derived from
the people."  By the Constitution the people simply have
placed limitations upon their power to legislate.  By section 7
they have removed certain limitations which by the original
Constitution they had placed upon themselves respecting muni-
cipal or *quasi-*municipal government.

Counsel for the intervener repeatedly fall into error by as-
suming that the amendment confers power upon the legislature.

It does nothing of the kind; it simply removes limitations which theretofore existed.

The objection that the amendment attempts to authorize the legislature to amend the Constitution is not warranted by the terms of the amendment nor by any legitimate inference from its language. That the amendment permits the legislature to pass Acts which prior thereto it could not pass was the very end designed by the measure.

(b) Many objections are answered by an inspection of the **[8]** amendment and the terms of the Act. For instance, it is urged that the amendment and the Act are in contravention of section 5 of Article VI respecting senatorial districts and section 6 of the same Article respecting representatives in the legislative assembly to which the county of Silver Bow is entitled, but by the other terms of the Act (section 1) it is provided: "As a political subdivision of the state the city and county of Butte shall have the status of a county and for the purpose of representation in the state legislature, as provided by the Constitution and laws of Montana, and for all other purposes, it shall replace and be the successor of Silver Bow county." It is also said that section 13 of Article VIII respecting judicial districts is violated, but we find that it is provided in section 1 of the Act: "Until otherwise provided by law the city and county of Butte shall constitute the second judicial district of the state."

(c) It is strenuously urged by counsel for intervener that the operation of the Act under the amendment serves to de- **[9]** prive the people of the county of Silver Bow and of the city of Butte of the power of local self-government, which is theirs inherently under our system of government, and counsel rely on *State ex rel. Gerry* v. *Edwards,* 42 Mont. 135, Ann. Cas. 1912A, 1063, 32 L. R. A. (n. s.) 1078, 111 Pac. 734, to sustain their contention. We think the principle recognized in that case is not impinged upon at all by the form of government proposed; we think the plan proposed does not in anywise

deprive the people of the territory affected of the power of local self-government. As a matter of fact under that plan the people in many ways have greater control over their local government than they have under the present system. It is true that the plan proposed, which is commonly known as the commission-manager form contemplates the election of seven commissioners who shall appoint a manager, who in turn shall have the power to appoint officers subordinate to himself. The basic idea of the proposed form of government is that executive power shall be centered in the manager upon whom shall rest the entire responsibility for the execution of the laws. Under this system the people enjoy the right to recall the commissioners. Under the present system they do not possess the right to "recall" any officer whatsoever. But it is urged that the people have no control over the manager, their control being over the commissioners only. Under the old system the people have no control over the appointees of the mayor and board of aldermen. A conclusive answer is that the legislature has the right to propose for the territory affected this form of government, and the people who reside therein have the right to adopt it. (*Kansas City* v. *Marsh Oil Co.*, *supra*; *Lackey* v. *State*, 29 Okl. 255, 116 Pac. 913; *Cole* v. *Dorr*, 80 Kan. 251, 22 L. R. A. (n. s.) 534, 101 Pac. 1016; *Eckerson* v. *Des Moines*, and *Mayor* v. *State*, *supra*; *State* v. *Tausick*, 64 Wash. 69, 35 L. R. A. (n. s.) 802, 116 Pac. 651.)

(d) It is also urged that the Act denies to the intervener the equal protection of the laws which is guaranteed to him under the fourteenth amendment to the federal Constitution. That this objection is baseless will be seen by reference to the following authorities: *State* v. *Brett*, 16 Mont. 360, 40 Pac. 873, following *Missouri* v. *Lewis*, 101 U. S. 22, 25 L. Ed. 989; 12 C. J. 1150, and cases cited.

(e) It is also urged by counsel for intervener that the Act is violative of section 7 itself by reason of the fact that it [10] does not in express terms provide how the government

authorized thereby, if adopted, may be discontinued. But this is not a valid objection against the constitutionality of the Act. It is not a general practice in prescribing a form of government to provide also for its nullification. The legislature has the power to provide for a method whereby the form of government proposed by it may be discontinued. Whether the legislature shall exercise this power is within its discretion. It is to be presumed that the people, acting through the legislature, will provide a method of discontinuance if it is deemed advisable.

(f) It is urged also that, because persons who do not reside **[11]** within the limits of the city of Butte are empowered to pass upon the adoption of the Act, thereby they are given the power to dissolve or disincorporate the city and to vote away its property, and, conversely, that the people who are residents of the city of Butte may vote away property of the county which lies outside of the city of Butte. Similar questions were raised in *People ex rel. Elder* v. *Sours, supra,* upon which the supreme court of Colorado said: "Under the first objection it is said that some of the adjoining towns have by this amendment lost their public property; that, as the people of these towns had erected town buildings, these town buildings will be taken away from them, because the towns themselves are consolidated with Denver; that the people of other towns, excluded from the city and county of Denver, have contributed to the erection of public buildings in Arapahoe county, and that they will lose their share or interest in such public buildings and be required to contribute to the erection of public buildings in a new county. These are incidental and unavoidable conditions, which exist whenever the boundaries of counties are changed or municipalities are consolidated. These municipalities exist for the public convenience. Their property is the property of the public, and is held, not as private property, but subject to the changing conditions and requirements of local government."

Again, it may be observed that the people of Montana, acting through their legislative assembly and in a manner permitted by the Constitution, have submitted to the people of Silver Bow county and the city of Butte the question whether they will change their form of local government in accordance with a new form or plan, that is, the Act in question. The sovereign people residing in the localities affected are accorded the privilege of registering their desires accordingly, and, if a majority of them shall vote in favor of the form or plan proposed, the minority must needs submit to what the majority have said. This is a fundamental American principle, and counsel have not presented any argument which convinces us that there is any legal obstacle in the way of the election.

IV. (a) The intervener is a creditor of both the city of [12] Butte and the county of Silver Bow, holding a claim against the former for $5.15 evidenced by a city warrant, and against the latter for $12 evidenced by a county warrant, and he contends that the Act in question, and particularly sections 127 and 128 thereof, operate to deprive him of his security for the payment of his claim and thereby impair the obligation of these contracts. Sections 127 and 128 provide that if the Act is adopted by a vote of the people, and becomes operative by the election and qualification of the commission, the separate corporate existence and government of the county and each city and town located therein shall be deemed merged into the municipality of the city and county of Butte, which municipality shall thereupon succeed to, possess, and own all of the property and assets of such cities and towns and the county and become responsible for all the obligations and liabilities of the county, cities and towns so consolidated and that the property, funds, and money of said several governments shall be transferred to the new municipality.

To care for the indebtedness previously incurred by the separate units embraced within the territory of the new government, section 58 of the Act provides that the territory com-

prised within the boundaries of any city, town or district existing within the county at the time of the adoption of the Act by the electors, shall, for the purpose of paying the interest and principal of any such debt, be continued as a special district until such debt shall have been paid; and, further, that the commission in the annual tax levy ordinance shall make a provision for the levy on the property in such districts of a sufficient amount of taxes to provide for the payment of the interest on the indebtedness against it and also for the principal thereof when the same shall mature.

Thus, so far as the claims against the city of Butte are concerned, all the property embraced in the corporate limits as they exist when the consolidation or merger takes place would be embraced within a special district and subject to the payment of all prior claims. By this provision all the property of the city is specifically impounded in such special district for the purpose of taxation to meet such claims. That is the only security which the intervener or other creditors of the city now possess to insure the payment of their claims. The only change is that under the new plan the taxes to meet such claims must be levied and collected by officers designated by a different title. The same condition would exist as to the indebtedness of the county as a whole.

The provisions of section 127 and 128 create more than a moral obligation on the part of the merged municipality in reference to the payment of such claims. Section 128 gives the commission power to make all regulations necessary for the transition from the former plan of government to the new one. If it should appear that a creditor had a claim against the city or county before the merger and that the commission should refuse or neglect to make provision for its payment in the manner pointed out in section 58, can it be doubted that a court would hesitate in an appropriate action to compel it to do so? The suggestion of the question carries with it a negative answer. Thus, a creditor of the city or county has his claim fully rec-

ognized by the Act. The same property is held as security therefor, the same method retained to produce funds for its satisfaction, and the law would afford an ample method to compel action for raising the same. The validity of his claim and the efficiency of the method for enforcing it are in no wise interfered with by the Act. (*People ex rel. Frank* v. *Supervisors,* 21 Cal. 669.)

(b) It is claimed by counsel for the intervener that the [13] wording of the amendment limits the authority of the legislature to the adoption of either a general or a special law, that, the legislature having passed a general law applicable to the whole state prior to the adoption of the Act in question, it was thereby precluded from passing a special law designed for Butte and Silver Bow county only.

The wording of the amendment would indicate to an ordinary person voting thereon that it was contemplated that by its adoption all constitutional inhibitions theretofore existing were removed so that the legislature might thereafter provide a form and plan of government for counties, or for cities and counties, in such form or plan as it might see fit to prescribe, either by a special law applicable to a particular district or by a general law applicable to the state at large. The only thing which might indicate a contrary intention is the use of the word "or" between the words "general" and "special."

It should be borne in mind, as heretofore pointed out, that "all political power is vested in and derived from the people"; that the legislature as the representative of the sovereign people has every power which is not specifically denied by the Constitution; that the Constitution is not a grant of power but a limitation thereof. (See authorities above.) So the inquiry here is whether the amendment in fact limited the right of the legislature to pass but a single Act under its provisions.

In construing the Constitution the same rules apply as in [14] the construction of statutes. (*Martien* v. *Porter,* 68 Mont. 450, 219 Pac. 817.) And such a construction must, if

possible, be adopted as will give effect to all of its provisions. It does not seem to us that the use of the word "or" was intended to or did result in the limitation upon the legislative power contended for. If the provision was that the legislative assembly might by general "and" special law provide any plan, *etc.*, there could be no doubt about it.

In order to ascertain and carry out the real intent of a provision such as this it not infrequently happens that it is necessary to read the conjunctions "or" and "and" one for the other. "Indeed these words are said to be convertible into each other as the sense of the enactment and the necessity of harmonizing its provisions may require." (Endlich on Interpretation of Statutes, sec. 303.) Referring to this subject in 2 Lewis' Sutherland on Statutory Construction, section 397, it is said: "To carry out the intention of the legislature it is occasionally found necessary to read the conjunctions 'or' and 'and' one for the other."

The case of *North Springs Water Co.* v. *Tacoma,* 21 Wash. 517, 47 L. R. A. 214, 8 Pac. 773, is a good illustration of the application of the rule laid down in these authorities in the construction of a statute. In that case the city had been granted power in the Act of its creation to construct waterworks for itself or to authorize the construction of the same by others. It was there held that the power granted was not in the alternative; that the word "or" as used in the statute granting authority to the city was equivalent to the word "and," and that although the city had previously granted to others the right to construct such works it still had authority to construct similar works for itself.

The same reasoning is applicable to this case. Although the framers of the amendment used the word "or," it is apparent that it was not within their contemplation to impose a limitation upon the legislature against adopting both a general and special law to carry out its provisions. For this reason and

under the authorities above cited, counsel's contention cannot be sustained.

(c) The intervener also urges that the petitions filed with [15] the county clerk asking for the submission of the question of the adoption of Chapter 160 to the electors of the county did not comply with the requirements of section 129 of the Act and were not sufficient to confer authority upon the board of county commissioners to order or hold an election, for the reason that they did not have a copy of Chapter 160 attached to or incorporated in them.

Section 129 provides the method of submitting to the electors the question of the adoption of the Act. The proceeding is initiated by filing with the county clerk a petition signed by at least 2,500 electors. The part of the section referred to in support of counsel's contention reads: "Any such petition shall be signed and filed, and shall be verified by the clerk, in the manner prescribed in this Act for the signing, filing and verification of a referendum petition." These provisions refer only to the manner in which the petition therefor shall be signed and filed except that it shall be "signed by electors qualified in number to at least ten per centum (10 per cent) of those who voted at the last preceding general election," and shall be "filed with the clerk." Section 22 provides: "If a referendum petition * * * be found sufficient by the clerk he shall certify that fact to the commission. * * * " This is the verification contemplated by section 129.

As to the substance of a referendum petition, section 21 requires that it "shall contain the text of the ordinance, or part thereof, the repeal of which is sought." But this has no connection with the method or form of signing, filing or verification of the petition but relates to the substantial requirements of the contents of the petition itself.

There is a reason why a referendum petition should contain the text of the ordinance to be submitted which does not apply to a petition for the submission of the Act under consideration.

In the latter case it is presumed that the electors have knowledge of the legislative Act, while in case of an ordinance referred to in a referendum petition it is necessary that the same should be set out at length therein in order that the electors may be advised of the contents of the ordinance which they are to reject or approve.

(d) In the original petition and the complaint in intervention objections are taken to some provisions of Chapter 160 in addition to those above considered, but they have not been discussed by counsel in their briefs. They have received our attention. While they do not seem to be open to the objections made, it is not considered necessary to express any opinion upon them, since they do not affect the validity of the Act as a whole, but go only to minor details. Should the questions presented by these objections be raised in the future, they can be more satisfactorily decided after the court has had the benefit of full discussion by briefs and argument of counsel, and for this reason an opinion upon them is expressly reserved.

The motion to quash the citation and the demurrers interposed to the petition and to the complaint in intervention are sustained and the proceeding is dismissed.

*Dismissed.*

All the Justices concur.